**Sheila PRENTICE, Plaintiff,**

v.

**Kenneth APFEL, Commissioner of Social Security, Defendant.**

**No. 96 Civ. 9618(PKL).**

United States District Court, S.D. New York.

July 1, 1998.

Binder and Binder, Jericho, NY, Charles E. Binder, of counsel, for Plaintiff.

Mary Jo White, United States Attorney, Southern District of New York, New York

City, Susan D. Baird, of counsel, for Defendant.

## *OPINION AND ORDER*

LEISURE, District Judge.

Plaintiff Sheila Prentice brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for social security disability insurance benefits and Supplemental Security Income ("SSI"). Now before this Court are plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and defendant's cross-motion for the same. For the reasons discussed below, each motion is granted in part and denied in part.

## BACKGROUND

### I. Prior Proceedings

Plaintiff filed applications for disability insurance benefits and SSI on August 9, 1994. These applications were denied by the Social Security Administration (the "Administration") on October 5, 1994. Plaintiff requested reconsideration on October 9, 1994, and reconsideration was denied on February 16, 1995.

On April 30, 1995, plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on March 7, 1996, before the Honorable Mark Hecht. Plaintiff appeared at the hearing *pro se* and testified about her alleged disability. In a decision dated April 4, 1996, Judge Hecht found that plaintiff was not disabled within the meaning of 42 U.S.C. § 1382c(a)(3)(A)[1] and rejected her applications for disability insurance benefits and SSI. On April 17, 1996, plaintiff requested review of this decision by the Appeals Council; on October 29, 1996, her request was denied. Plaintiff now seeks review in this Court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Facts

Plaintiff has ten years of formal schooling and has earned her General Equivalency Degree. In November of 1993, she was involved in a motor vehicle accident that allegedly exacerbated a pre-existing condition of neck and shoulder pain and rendered her unable to work. Until that time, plaintiff had worked in a variety of jobs, including service as a meat cutter, janitress, house cleaner, and fast-food cook.

At the hearing before Judge Hecht, plaintiff testified that she experiences headaches and shoulder and neck pain on a daily basis. She claimed that the pain is usually dull and constant, but that it sharpens when she uses her hands and arms to lift things. *See* Transcript of Administrative Hearing, March 7, 1996, at 11 (hereinafter cited as "Tr. at __"). Plaintiff also stated that she can sit comfortably for up to two hours, that she can stand for approximately one and a half hours, that she cannot walk "very far", and that she cannot lift "very much". Tr. at 11, 12. Plaintiff further testified that, due to her pain, she could not perform any of her past relevant work, but that she believed she could perform "light work" if she were able to find it. *Id.* at 13.

Following the motor vehicle accident, plaintiff was admitted overnight to a Birmingham, Alabama hospital. She was released the next morning to seek treatment from her private doctor. On February 9, 1994, plaintiff was examined by Dr. W.S. Fisher at the Neurosurgery Clinic of the University of Alabama Medical School. Plaintiff complained of pain in the right side of her neck and of "shock-like feelings going down her right arm and fingers." Administrative Record at 12 (hereinafter cited as "R. at __"). Dr. Fisher found that plaintiff's reflexes, motor strength, and sensory perception all were within normal limits. He also found

---

**1.** Section 1382c(a)(3)(A) states in pertinent part, "An individual shall be considered to be disabled for purposes of this title [42 U.S.C. §§ 1381 et seq.] if he is unable to engage in any substantial gainful activity by reason of any medically deter-minable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than twelve months...."

that a Magnetic Resonance Imaging ("MRI") exam showed no significant cervical stenosis.[2]

On March 9, 1994, following continued complaints of pain, plaintiff again was examined by Dr. Fisher. Dr. Fisher found no reason to suggest surgery and referred plaintiff to the Multiple Sclerosis Clinic for examination by Dr. Galen Mitchell. Dr. Mitchell reviewed an MRI that showed mild stenosis and some degenerative change, but revealed no significant cord encroachment[3]. He found no evidence to suggest a peripheral nerve encroachment[4] or a central nerve process[5]. Further testing showed no evidence of denervation[6] to suggest a peripheral nerve or nerve root process[7]. Dr. Mitchell diagnosed plaintiff's condition as Fibromyalgia Rheumatica[8], but noted that the severity of her discomfort, coupled with her equivocal reflex-test results, suggested the possibility of a central nervous system process. *See* R. at 118.

At the time of Dr. Mitchell's examination, plaintiff was taking Isoptin, indicated for treatment of hypertension[9], and Flexeril, indicated for relief of musculoskeletal pain. In addition to these medications, Dr. Mitchell prescribed Elavil, an antidepressant indicated for relief of endogonous depression[10] and pain associated with fibromyalgia.

On April 27, 1994, plaintiff returned to Dr. Fisher for a follow-up examination. Dr. Fisher was reluctant to offer surgical cervical decompression, instead referring plaintiff to the Pain Clinic for management of her pain.

On September 20, 1994, at the Administration's request, plaintiff underwent a consultative examination by Dr. Rebecca Turner. Despite finding some restrictions in plaintiff's neck and spine flexibility, Dr. Turner concluded that plaintiff's limitations with respect to normal working activities were "very, very mild" and could be managed with physical therapy. *Id.* at 125.

On June 16, 1995, plaintiff was examined by Dr. R.A. Yearwood, her treating physician at the time of the hearing. Dr. Yearwood diagnosed three conditions: (1) Cervical Degenerative Joint Disease[11]; (2) menopause; and (3) depression. Dr. Yearwood prescribed Amitryptiline for depression (the drug is the generic equivalent of Elavil) and Flexeril for Cervical Degenerative Joint Disease. *See id.* at 133. On a "Medical Assesment of Ability to Do Work Related Activities" form (the "Form"), Dr. Yearwood indicated that plaintiff could "occasionally" lift up to twenty pounds and could "frequently" lift up to ten pounds. *Id.* at 136. He noted that plaintiff's ability to sit was not affected by her condition, that she could balance "frequently", crouch and climb "occasionally", and that she was limited in bending because of "pain on

---

**2.** Cervical stenosis is an abnormal narrowing or constriction of the cervix. In anatomical nomenclature, "cervix" is used to designate the neck or the constricted portion of the dorsal horn, or column of gray matter, in the spinal cord. *See Schmidt's Attorney's Dictionary of Medicine,* 159 (Vol. 4 Supp.1995) (hereinafter "Schmidt's").

**3.** "No significant cord encroachment" means that despite mild constriction, plaintiff's cervix did not encroach harmfully upon her spinal cord.

**4.** "Peripheral nerve encroachment" means harmful encroachment upon nerves that are external to the central nervous system (*i.e.,* the brain and spinal cord). *See Schmidt's* at P–127.

**5.** A "central nerve process" is an adverse change affecting the central nervous system. *See id.* at P–326.

**6.** "Denervation" is the condition of having the nerve supply cut or interrupted. *See id.* at D–41.

**7.** The terms "peripheral nerve" and "nerve root process" refer to adverse changes affecting the peripheral nerves or nerve roots. *See id.* at P–326.

**8.** Fibromyalgia Rheumatica is a rheumatic condition characterized by pain, tenderness, and stiffness in the muscles and fibrous connective tissues. *See id.* at Vol. 2 Supp. 55, 56.

**9.** Hypertension is abnormally high blood pressure. *See id.* at H–231.

**10.** Endogonous depression is "a depression that is not a reaction to some stressful event, but is but is based on some (not clearly understood) biological disorder." *Id.* at Vol. 2 Supp. 41.

**11.** Degenerative Joint Disease is "a form of chronic arthritis characterized by abnormal overgrowth of the bone, degeneration and overgrowth of the cartilage, and a thickening of the membranes which cover the surface of the bones." *Id.* at D–29, H–235.

flexion". *Id.* at 135, 136. Dr. Yearwood added that plaintiff's ability to walk was not affected by her condition. However, he then noted that she could only walk for one hour without interruption. In response to the question, "What medical findings support th[ese] assessment[s]?" Dr. Yearwood indicated only that "patient gives h/o [history of] of being unable to stand or walk" for more than one hour. *Id.* at 135.

Finally, although the record includes no evaluations of plaintiff by an examining psychiatrist or psychologist, Judge Hecht had before him a "Mental Residual Functional Capacity" form filled out by the Administration's non-examining medical consultant, Dr. Gloria Roque. Dr. Roque, who based her assessments upon a review of plaintiff's medical records, diagnosed plaintiff as suffering from Reactive Depression[12] and Somatoform Pain Disorder[13]. While Dr. Roque concluded that plaintiff's condition caused few difficulties with respect to daily living and social interaction, she found moderate limitations on plaintiff's ability to concentrate, to follow detailed instructions, and to complete tasks in a timely manner. *See id.* at 53, 54.

## DISCUSSION

### I. Standard for Judgment on the Pleadings

■ "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters Inc.*, 842 F.2d 639, 642 (2d Cir.1988). The Court of Appeals for the Second Circuit has explained, "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994). Under the Rule 12(b)(6) standard, a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). In deciding a motion for judgment on the pleadings, a court may consider the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, matters subject to judicial notice, and documents submitted by the moving party, so long as such documents either are in the possession of the party opposing the motion or were relied upon by that party in its pleadings. *See Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

### II. Scope of Review

■ A reviewing court must uphold the final decision of the Commissioner when that decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's final determination thus is accorded considerable deference, and a reviewing court should not "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon de novo review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991) (quoting *Valente v. Secretary of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

■ This narrow scope of review is triggered only once a reviewing court is "satis-

---

**12.** Reactive Depression is "[m]ental depression which begins as grief and a feeling of sadness in response to an emotional trauma ... and does not disappear within a reasonable time." *Id.* at Vol. 4 Supp. 12.

**13.** Somotaform Pain Disorder is a condition in which a patient experiences physical symptoms for which no physical cause can be found, and for which there is definite or strong evidence that the underlying cause is psychological. *See The American Medical Association Encyclocedia of Medicine,* 923 (1989).

fied that the claimant has received 'a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act.' " *Hankerson,* 636 F.2d at 895 (quoting *Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir.1972)). The claimant's right to a full hearing imposes upon the ALJ an "affirmative obligation to assist [plaintiff] in developing [her] case." *Cruz v. Sullivan,* 912 F.2d 8, 12 (2d Cir.1990) (quoting *Eiden v. Secretary of HEW,* 616 F.2d 63, 65 (2d Cir.1980)). Where a claimant appears at the hearing *pro se,* as plaintiff did, the ALJ has a "duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts...." *Gold,* 463 F.2d at 43. Thus, a reviewing court must begin by determining whether the ALJ "adequately protect[ed] the rights of [the] *pro se* litigant by ensuring that all of the relevant facts were sufficiently developed and considered." *Hankerson,* 636 F.2d at 895.

## III. Analysis

Applying these standards to the instant case, the Court concludes that Judge Hecht's decision that plaintiff is not disabled by physiological pain is the product of a full hearing and is supported by substantial evidence. However, the Court finds that Judge Hecht did not satisfy his obligation to develop the record with respect to the issue of plaintiff's potential mental impairment. Judge Hecht's determination that plaintiff does not suffer from a disabling mental impairment is not the result of a full hearing and is not yet supported by substantial evidence.

### A. *Physiological Disability*

■ With respect to plaintiff's claims of neck and shoulder pain, Judge Hecht clearly satisfied his affirmative duty to "scrupulously ... inquire of and explore for all the relevant facts." *Gold,* 463 F.2d at 43. Judge Hecht reviewed the reports of four separate physicians, including the report of plaintiff's treating physician at the time of the hearing. Moreover, Judge Hecht developed the hear-

ing transcript by questioning plaintiff about the location of her pain, the degree of her pain, and the courses of therapy she pursued for her pain. *See* Tr. at 10, 11.

Dr. Yearwood's facially inconsistent statements on the Form (*i.e.,* the assertions that plaintiff's ability to walk was not affected by her condition, but that plaintiff could only walk for one hour uninterrupted) did not constitute a conflict that Judge Hecht was bound to resolve. Pursuant to 20 C.F.R. § 404.1512(e)(1), the Administration "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved...." Dr. Yearwood's statements did not constitute such a "conflict". Dr. Yearwood specifically noted that his conclusions regarding plaintiff's ability to walk were based entirely on plaintiff's relation of her medical history; he listed no objective findings to explain plaintiff's complaints of pain. *See* R. at 135. The most reasonable interpretation of this evaluation is that Dr. Yearwood made note of plaintiff's alleged inability to walk for more than one hour uninterrupted solely in deference to her complaints of pain. When subject to close scrutiny, then, Dr. Yearwood's statements on the Form are not inconsistent; they merely relate plaintiff's claim that she is unable to walk as well as Dr. Yearwood's inability to uncover objective medical evidence to support that claim.

Moreover, even if Dr. Yearwood's statements were inconsistent, they did not constitute "a conflict that *must be resolved ....*" 20 C.F.R. § 404.1512(e)(1) (emphasis supplied). Judge Hecht reviewed the reports of four physicians, three of whom (Drs. Fisher, Mitchell, and Turner) [14] found no physiological evidence to support plaintiff's claim of disabling pain.[15] These three evaluations constituted substantial evidence that allowed Judge Hecht to render a decision without resolving the facial inconsistency on Dr. Yearwood's Form. In light of this substantial evidence, Judge Hecht was not obliged to

14. Arguably, Dr. Yearwood's diagnosis of Cervical Degenerative Joint Disease represents a finding of a physiological condition that could explain plaintiff's pain. *See* R. at 133.

15. In fact, Dr. Turner, the Administration's consulting physician, specifically indicated that plaintiff's physical limitations were "very, very mild". *Id.* at 127.

seek clarification from Dr. Yearwood. Thus, the Court finds that Judge Hecht's decision was based upon full consideration of an amply-developed record.

Judge Hecht also was not obliged to inquire at greater length about the specific extent of plaintiff's inability to walk and carry. Judge Hecht engaged plaintiff in the following colloquy at trial:

Q How far can you walk?

A Not very far. My legs and stuff feel like they're real heavy, like something else is weighing them down.

Q How much do you estimate you could lift or carry?

A Not very much.

Tr. at 11, 12. While Judge Hecht could have responded to plaintiff's vague answers with more precise questions, his failure to do so did not deprive plaintiff of a full and fair hearing. Nor did it render his conclusions inconsistent with substantial evidence. Judge Hecht already had in his possession medical reports giving specific answers to the above questions. That he did not duplicatively elicit these answers from plaintiff did not render his consideration of the issues incomplete.

In sum, this Court concludes that Judge Hecht's determination that plaintiff is not disabled by physiological pain is the product of a fair hearing and is based upon substantial evidence. The Court therefore grants defendant's cross-motion for judgment on the pleadings with respect to Judge Hecht's determination that plaintiff's back and neck pain did not render her disabled.[16]

## B. Mental Disability

█ Judge Hecht did not satisfy his duty to develop the record with respect to plaintiff's potential mental disability. In the decision denying plaintiff's benefits applications, Judge Hecht dismissed the possibility of mental impairment in one sentence: "Although [plaintiff's] current physician lists a

diagnosis of depression, there is no indication that the claimant receives psychotherapy and, neither at the hearing nor at the time she filed her application, did she allege psychopathology." R. at 14.

That plaintiff did not specifically allege psychopathology in her initial benefits applications is not dispositive. The relevant regulation mandates that the Administration will "consider only impairment(s) which you say you have *or* about which we have evidence." 20 C.F.R. § 404.1512(a) (emphasis supplied). The disjunctive phrasing of this rule requires an ALJ to investigate the disabling effects of an impairment if the record contains evidence indicating that such an impairment might exist. This obligation is triggered without regard to whether the claimant has alleged that particular impairment as a basis for disability. Accordingly, the fact that plaintiff did not cite depression as a basis for disability is not dispositive of the issue of whether Judge Hecht had a duty to investigate the possibility that plaintiff was disabled by a mental impairment.

Plaintiff's record contains ample evidence suggesting the presence of such an impairment. Of the four physicians who examined her, two prescribed antidepressant medication.[17] Moreover, both Dr. Yearwood and Dr. Roque explicitly listed diagnoses of depression on their evaluation forms, with Dr. Roque adding a diagnosis of Somatoform Pain Disorder. *See* R. at 60, 62, 129, 133. Finally, in a form filed prior to the hearing, plaintiff herself described both suicidal ideation and feelings of worthlessness and despair. *See id.* at 86 (stating, "I'm very depressed and I'm always thinking about ending my life because [I] feel worthless. . . ."). This evidence should have suggested to Judge Hecht the possible presence of a disabling mental impairment. It thus sufficed to trigger his duty to investigate under 20 C.F.R. § 404.1512(a), and his concomitant "obligation to assist [plaintiff] in developing [her] case." *Cruz,* 912 F.2d

---

16. Accordingly, plaintiff's motion for judgment on the pleadings with respect to the same issue is denied.

17. Dr. Mitchell prescribed a 25 milligram course of Elavil, with quantities to be increased to 50 or

75 milligrams as needed or tolerated. *See* R. at 117. Dr. Yearwood continued this course of medication approximately one year later, prescribing a 25 milligram course of amitryptiline. *See* R. at 133.

at 12 (2d Cir.1990) (quoting *Eiden,* 616 F.2d at 65 (2d Cir.1980)). As noted above, this obligation involves a duty of scrupulous and conscientious inquiry. *See Gold,* 463 F.2d at 43.

 Judge Hecht failed to discharge his obligation in this regard. He did not elicit information about the nature or severity of plaintiff's depression from plaintiff's doctors (despite the mandate in 20 C.F.R. § 404.1512 that the Administration *"will* re-contact your treating physician [when] ... the report does not contain all the necessary information ...." (emphasis supplied)). Nor did he order a consultative examination by a psychiatrist or psychologist. When plaintiff stated at the hearing that she "mostly just lay around and cry", Judge Hecht asked only, "How long can you sit comfortably?" Tr. at 38. He did not follow up with a single question about the symptoms, nature, or extent of plaintiff's possible depression.

This failure to inquire into the issue of whether plaintiff suffers from a disabling mental impairment is inconsistent with an ALJ's responsibility to "protect the rights of [the] *pro se* litigant by ensuring that all of the relevant facts are sufficiently developed and considered." *Hankerson,* 636 F.2d at 895. In light of this failure, the Court finds that Judge Hecht's dismissal of plaintiff's applications for benefits due to mental impairment was not the result of a "full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the act." *Id.* at 895 (quoting *Gold,* 463 F.2d at 43). Accordingly, insofar as plaintiff moves the Court to remand for amplification of the record on the limited issue of whether plaintiff is disabled by depression or Somatoform Pain Disorder, plaintiff's motion for judgment on the pleadings is granted. *See Frank v. Chater,* 924 F.Supp. 416, 429 (E.D.N.Y.1996) (remanding action for amplification of the record because "[n]otably absent was any substantial inquiry into the nature of [plaintiff's] impairments or their effects on his ability to work.").[18]

18. Insofar as defendant moves the Court to affirm Judge Hecht's ruling on this issue, defen-

## CONCLUSION

With respect to Judge Hecht's determination that plaintiff is not disabled by physiological pain, defendant's motion for judgment on the pleadings pursuant to Fed.R.Civ.Pro. 12(c) is HEREBY GRANTED.

However, insofar as plaintiff moves this Court to remand the action for amplification of the record on the limited issue of whether plaintiff is disabled by depression or Somatoform Pain Disorder, plaintiff's motion for judgment on the pleadings pursuant to Fed. R.Civ.Pro. 12(c) is HEREBY GRANTED. **SO ORDERED.**

dant's cross-motion for judgment on the pleadings is denied.