■ EXCESS INSURANCE COMPANY LTD. et al., Appellants, v FACTORY MUTUAL INSURANCE COMPANY, Formerly Known as ALLENDALE MUTUAL INSURANCE COMPANY, Respondent. [769 NYS2d 487]—

Order, Supreme Court, New York County (Karla Moskowitz, J.), entered September 25, 2002, which denied plaintiffs' motion for partial summary judgment and granted defendant's cross motion for partial summary judgment, unanimously reversed, on the law, with costs, defendant's cross motion denied and plaintiffs' motion granted so as to declare that the portion of the reinsurance agreement between the parties requiring plaintiffs to bear their proportionate share of expenses incurred in the investigation and defense of any claim under the underlying policy is subject to the $7 million limit stated in the agreement.

Defendant Factory Mutual (formerly known as Allendale Mutual Insurance Company) insured a warehouse in Seclin, France. Defendant then obtained reinsurance from plaintiffs for a large portion of the risk. The reinsurance agreement contained a "Limit" provision limiting the reinsurance coverage to $7 million (U.S.) for any one occurrence. Immediately following this "Limit" provision were listed "Conditions," including the condition that "Reinsurers agree to follow the settlements of the Reassured in all respects and to bear their proportion of any expenses incurred, whether legal or otherwise, in the investigation and defence of any claim hereunder."

The warehouse burned down, and defendant commenced an unsuccessful litigation against the insured. After spending approximately $35 million in litigation expenses, defendant abandoned the litigation and settled with the insured for nearly $100 million.

The motion court concluded that the $7 million limit of the reinsurance coverage did not apply to the litigation expenses referred to in the "follow the settlements" clause contained in the agreement's "Conditions." We disagree, holding that the $7 million limit of the reinsurance policy is not superceded or overruled by the "follow the settlements" section of the policy, and so the expenses for which plaintiff reinsurers are obligated to reimburse defendant reinsured, including those pursuant to the "follow the settlements" section, cannot exceed the overall $7 million limit of the policy.

Initially, we conclude that New York law should be applied. In a conflicts of law analysis, the first consideration is whether there is any actual conflict between the laws of the competing jurisdictions. If no conflict exists, then the court should apply the law of the forum state in which the action is being heard (see Matter of Allstate Ins. Co. [Stolarz], 81 NY2d 219, 223 [1993]; Taylor v American Bankers Ins. Group, 267 AD2d 178 [1999]). Here, defendant's sole claimed difference in the laws of the two states is that it claims Rhode Island allows a court, when interpreting a contract, to consider extrinsic evidence. We disagree, and conclude that no such conflict exists.

Under Rhode Island law, as under New York law, "the clear and unambiguous language set out in a written instrument is controlling as to the intent of the parties thereto and governs the legal consequences of the contract provisions" (Theroux v Bay Assoc., Inc., 114 RI 746, 749, 339 A2d 266, 268 [1975]; see Chapman v Vendresca, 426 A2d 262 [RI 1981]; Supreme Woodworking Co. v Zuckerberg, 82 RI 247, 252, 107 A2d 287, 290 [1954]). We do not read Westinghouse Broadcasting Co., Inc. v Dial Media, Inc. (122 RI 571, 410 A2d 986 [1980]) as altering this well-established rule. Therefore, the expert affidavit submitted by defendant regarding industry custom is extrinsic evidence which should not be considered in interpreting this clear and unambiguous document.

Even if a conflict in the two states' law existed, under the complex circumstances here, the mere fact that defendant is a Rhode Island company which paid the underlying policy premiums from Rhode Island would not justify the application of Rhode Island law. We also note that throughout the four years of the parties' litigation in the Federal District Court, defendant took the position that New York law applied.

As we read the reinsurance agreement, while plaintiff reinsurers are required by the policy to "follow the settlements of the Reassured in all respects and to bear their proportion of any expenses incurred, whether legal or otherwise, in the investigation and defence of any claim hereunder," this provision does not supercede or supplant the "limit" of the overall contract (*see Bellefonte Reins. Co. v Aetna Cas. & Sur. Co.*, 903 F2d 910 [1990]; *Unigard Sec. Ins. Co. v North Riv. Ins. Co.*, 4 F3d 1049 [1993]). While the reinsurance contracts considered in *Bellefonte* and *Unigard*, unlike that in the present case, contained language which specified that the reinsurance was "subject to" the terms and conditions of the reinsurance contract, that distinction does not warrant the application of different reasoning in this case, since it seems evident that all contracts are subject to their terms and conditions; the real question is how those terms and conditions affect each other. The overriding determination in *Bellefonte* and *Unigard* was that the "follow the fortunes" clauses of the reinsurance contracts considered there coexisted with, and did not supplant, the contract limitations. Indeed, this point appears to have been accepted by the Court of Appeals in *Travelers Cas. & Sur. Co. v Certain Underwriters at Lloyd's of London* (96 NY2d 583 [2001]).

As the Federal Southern New York District Court noted in the litigation before it between these parties on this point, had the reinsured desired to have the expenses not subject to the limits of the contract, it could easily have inserted, directly prior to the "follow the settlements" clause, language such as "notwithstanding any provision in this contract to the contrary" or something similar (*Allendale Mut. Ins. Co. v Excess Ins. Co., Ltd.*, 970 F Supp 265, 269 [1997]).

Accordingly, the $7 million "Limit" contained in the reinsurance agreement between plaintiffs, as reinsurers, and defendant, as reinsured, applied to the reinsurers' proportionate share of expenses incurred in the investigation and defense of any claim under the underlying policy. Concur—Tom, J.P., Saxe, Rosenberger, Williams and Gonzalez, JJ.