**Christina LABAJO, individually and on behalf of all other parties similarly situated, Plaintiff,**

**v.**

**BEST BUY STORES, L.P., Time Inc., and Does 1 through 50, Defendants.**

**No. 06 Civ 783(DC).**

United States District Court, S.D. New York.

March 15, 2007.

Squitieri & Fearon, LLP, New York City by Stephen J. Fearon, Jr., Philip P.

Foote, Keller ● Fishback LLP, New York City by Daniel Keller, for Plaintiff Christina Labajo.

Manatt, Phelps & Phillips, LLP, New York City by Gregory A. Clarick, Jonathan Melber, for Defendant Time Inc.

Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, MN by Anne M. Lockner, Bradley M. Orschel, for Defendant Best Buy Stores, L.P.

## MEMORANDUM DECISION

CHIN, District Judge.

On October 29, 2004, plaintiff Christina Labajo purchased a DVD, a soft drink, and candy at a Best Buy store in Chino Hills, California. When the sales clerk saw Labajo taking out a debit card to pay for the purchases, the clerk told Labajo she was eligible for a free subscription to *Sports Illustrated.* Labajo accepted the offer. Eventually, however, after she received eight free issues of the magazine, Labajo's subscription was automatically renewed and her debit card was charged $23.50 three times, for a total of $70.50.

In this case, Labajo sues on behalf of herself and all consumers who purchased merchandise from Best Buy stores since February 2003 who were "improperly charged" for magazine subscriptions to *Sports Illustrated, Entertainment Weekly,* and *Time.* Labajo contends that defendants Best Buy Stores, L.P. ("Best Buy") and Time, Inc. ("Time"), the publisher of the three magazines, are liable for, *inter alia,* unjust enrichment, breach of contract, and negligence.

Best Buy and Time move for judgment on the pleadings dismissing the amended complaint, contending that the documentary evidence annexed to the pleadings shows that Labajo's claims are without merit. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

### A. The Facts

The facts as alleged in the amended complaint are assumed to be true for purposes of this motion. In addition, certain facts are drawn from documentary evidence attached to defendants' answers.[1]

### 1. The Parties

Labajo is a citizen of California. (Amended Complaint ("AC") ¶ 20). She purports to represent a class of persons consisting of all consumers who purchased merchandise from Best Buy since February 2003 who participated in the magazine promotion described below. (*Id.* ¶ 31). Best Buy is a retailer of consumer electronics, home-office products, entertainment software, appliances, and related items. (*Id.* ¶ 24). It is incorporated in Virginia and has its principal place of business in Minnesota. (*Id.* ¶ 21). Time is a Delaware corporation with its principal place of business in New York. (*Id.* ¶ 25). Time publishes magazines, including *Sports Illustrated, Entertainment Weekly,* and *Time.* (*Id.* ¶ 26).

### 2. Labajo's Purchases

On October 29, 2004, Labajo purchased the movie "White Chicks–Unrated," a Dr.

---

1. As the Second Circuit has held in affirming the granting of a Rule 12(b)(6) motion: "We are not limited solely to the allegations in the complaint .... Where a plaintiff has 'reli[ed] on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' we may consider its contents even if it is not formally incorporated by reference." *Broder v. Cablevision Systems Corp.,* 418 F.3d 187, 196 (2d Cir.2005) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002)).

Pepper, and M & M peanuts at a Best Buy store. (Time's Answer to Amended Complaint ("Time Am. Ans.") Ex. 3; Best Buy's Answer to Amended Complaint ("Best Buy Am. Ans.") Ex. D). When she approached to pay with her debit card,[2] the sales clerk informed Labajo that she was eligible for a free subscription to *Sports Illustrated.* (AC ¶ 57). Prior to completing the transaction, the sales clerk did not inform Labajo that she would be charged for the *Sports Illustrated* after eight issues, or that she had any obligation to cancel the subscription to avoid being charged for additional issues. (*Id.* ¶ 58).

Labajo then proceeded to sign a computer pad at the register to complete the transaction. (*Id.* ¶ 60). The computer pad did not disclose to Labajo that she could be charged for the subscription. (*Id.*).[3] After Labajo left the checkout line, the clerk placed a brochure relating to the magazine promotion in Labajo's shopping bag. Labajo also received a receipt, which showed the following:

| 001 | 6814012 | WHITE CHICKS–UNRATED | $15.99 |
| 002 | 6195618 | SPORTS ILLUSTRATED BROCHURE OF ***NON–TAXABLE ITEM*** | $ 0.00 |
| 003 | 6220911 | SPORTS ILLUSTRATED MAGAZINE OF ***NON–TAXABLE ITEM*** | $ 0.00 |
| 004 | 6737668 | DR. PEPPER ***NON–TAXABLE ITEM*** | $ 1.25 |
| 004 | 6737668 | DR. PEPPER PRICE OVERRIDE: $0.00 REASON: PACKAGE PRICE REG $1.25 | $ 1.25 |
| 005 | 5431339 | M & M PEANUT PRICE OVERRIDE: $0.00 REASON: PACKAGE PRICE REG $0.89 | $ 0.89 -$ 0.89 |
| 006 | 5431339 | M & M PEANUT ***NON–TAXABLE*** | $ 0.89 |
| | | Subtotal | $16.88 |
| | | Tax 7.75% | $ 1.24 |
| | | Total | $18.12 |

(Time Am. Ans. Ex. 3; Best Buy Am. Ans. Ex. D). The receipt also stated, however, that:

> I authorize Best Buy to give my credit or debit card to SI and SI to charge my card for the initial and six month renewal terms
>
> .... NO RISK: If within 8 issues you do not want the magazine, simply call Sports Illustrated at 1–800–284–8800 or go online to: www.sicustomerservice.com and you will NOT be charged.

(*Id.*).

After the transaction, Best Buy forwarded Labajo's debit card information to Time, which opened a *Sports Illustrated* account in her name. (AC ¶ 63). Labajo was charged on two separate occasions for $23.50. (*Id.* ¶ 64). She then telephoned *Sports Illustrated* to inquire about the charges. (*Id.* ¶ 65). The representative agreed to credit Labajo for the charges, but never did. (*Id.* ¶ 66). In fact, Time charged Labajo's debit card an additional $23.50, for a total of three charges equaling $70.50. (*Id.* ¶ 67). Labajo called defendants' representatives repeatedly for a refund, but to no avail. (*Id.* ¶ 68).

### 3. *The Magazine Promotion Program*

Since at least February 2003, Time and Best Buy have participated in a program whereby they promoted and sold subscriptions to certain magazines, including *Sports Illustrated, Entertainment Weekly,* and *Time.* (AC ¶ 38). Pursuant to an agreement between defendants, Best Buy is paid for every magazine subscription that it obtains from a consumer. (*Id.*

---

**2.** Although the complaint states that Labajo used a credit card, the receipt makes clear that she used a debit card. (Time Am. Ans. Ex. 3; Best Buy Am. Ans. Ex. D).

**3.** Defendants claim that the electronic signature pad notified Labajo of the terms of the promotion, and that plaintiff was required to sign her name to agree to the magazine promotion. (Defendants' Reply Memorandum in Support of Motion for Judgment on the Pleadings ("Def. Reply Mem.") at 2–3). Labajo, however, disputes this. *See* pg. 11–13, *infra.*

¶ 39). As a result, a consumer who purchases merchandise at Best Buy using a credit or debit card is told by the Best Buy representative that the consumer qualifies for free editions of *Sports Illustrated, Entertainment Weekly,* or *Time.* (*Id.* ¶ 40).

Best Buy managers instruct their employees to enroll consumers in the magazine subscription promotion without disclosing the terms of the promotion. (*Id.* ¶¶ 70–71). Specifically, the managers instruct the employees to inform the consumer that the credit or debit card information is used to validate the consumer's information for the magazine subscription, and that the card would not be charged. (*Id.* ¶ 72).

In addition, when consumers are asked to sign the electronic credit-card signature pad, the conditions of the magazine subscription offer are not displayed on the screen they are signing. (AC ¶ 43). Consumers are not informed as to the terms of the magazine subscription until after the transaction has been processed, and the consumer's credit or debit card information has already been collected by defendants. (*Id.* ¶ 44).

After the transaction occurs, Best Buy provides the consumer with a receipt stating that there is no charge for the magazine subscription. (*Id.* ¶¶ 46–49).

The consumer then immediately receives a brochure that provides the terms of the magazine subscription, including the fact that the consumer can try eight issues of *Entertainment Weekly* or *Sports Illustrated* "risk free." (Time Am. Ans. Ex. 1; Best Buy Am. Ans. Ex. A). The brochure tells the consumer that: "If within eight issues you do not want the magazine, simply call the Customer Service number be-low or go to the website and you will NOT be charged." The brochure further explains that "[i]f you choose to keep the magazine after the eighth issue," then the magazine is authorized to automatically charge the consumer's credit or debit card for $24.95, and the consumer receives an additional sixteen issues. (*Id.*).

Under the words "AUTOMATIC RENEWAL," the brochure states that the magazine company will continue to automatically renew the consumer's subscription every six months at the $24.95 price unless the consumer decides to cancel. (*Id.*). If the consumer cancels, then the consumer receives a refund for the unmailed issues. (*Id.*). It also states that if the consumer decides to cancel at any time during the first twenty-four issues, then the consumer is entitled to a full refund. (*Id.*).[4]

The Best Buy register clerk does not, however, inform the consumer that the consumer has to cancel the magazine subscription if she does not wish to be charged for automatic renewals. (*Id.* ¶ 73).

Often, the charges imposed by defendants for the magazines are higher than newsstand prices or subscription prices available on the internet. (*Id.* ¶ 55).

### B. *Procedural History*

Plaintiff filed her original class action complaint on February 2, 2006. On May 12, 2006, Best Buy and Time filed answers to the complaint.

On June 23, 2006, plaintiff filed an amended complaint, dropping her claims for negligent misrepresentation, quantum

---

**4.** Attached to Time's answer is a confirmation notice that is mailed to consumers at the beginning of the magazine subscription trial period. (Time. Am. Ans. ¶ 41 & Ex. 4). The notice sets out the details of the promotion. The pleadings do not, however, indicate that Labajo received this notice.

meruit, violation of the Unordered Merchandise Statute, fraud, and misrepresentation. The amended complaint asserts claims for: (1) unjust enrichment; (2) breach of contract; (3) breach of warranty; (4) negligence; and (5) unfair competition.

Defendants' motion for judgment on the pleadings followed. Oral argument was held on March 2, 2007. During the argument, Labajo's counsel agreed to withdraw the breach of warranty and unfair competition claims. (OA Tr. 20–21). Thus, only the unjust enrichment, breach of contract, and negligence claims remain.

The parties agree that the Court has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). (OA Tr. 2).

## DISCUSSION

First, I discuss the standard for judgment on the pleadings. Second, I discuss choice-of-law, as the remaining claims asserted are all state claims. Third, I discuss the merits of the remaining claims: (1) breach of contract, (2) unjust enrichment, and (3) negligence.

### I. Standard for Judgment on the Pleadings

■ A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is analyzed under the same standard as a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). See Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994). Accordingly, judgment on the pleadings is appropriate only if, drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to relief. See id. The well-pleaded factual allegations of the complaint are assumed to be true and "all contravening assertions in the movant's pleadings are taken to be false." 5C

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed.2004).

■ In deciding a motion for judgment on the pleadings, a court may consider the pleadings and exhibits or documents incorporated by reference, as well as matters subject to judicial notice. See Prentice v. Apfel, 11 F.Supp.2d 420, 424 (S.D.N.Y. 1998) (citing Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993)). Where a plaintiff's conclusory allegations are clearly contradicted by documentary evidence incorporated into the pleadings by reference, however, the court is not required to accept them. See Matusovsky v. Merrill Lynch, 186 F.Supp.2d 397, 400 (S.D.N.Y.2002).

### II. Choice of Law

The parties disagree as to which state's law should apply to the remaining claims. Plaintiff argues that New York law applies (Pl. Mem. at 7 n. 2), while defendants argue that California law applies (Def. Mem. at 9 n. 4). There is, however, no real conflict between the laws of California and New York for breach of contract and unjust enrichment. Compare Bridgeway Corp. v. Citibank, N.A., 132 F.Supp.2d 297, 305 (S.D.N.Y.2001), with Reichert v. General Ins. Co., 68 Cal.2d 822, 69 Cal.Rptr. 321, 442 P.2d 377, 381 (Cal.1968) (elements for breach of contract); compare Kidz Cloz, Inc. v. Officially for Kids, Inc., 320 F.Supp.2d 164, 177 (S.D.N.Y.2004), with Lectrodryer v. SeoulBank, 77 Cal.App.4th 723, 91 Cal.Rptr.2d 881, 883 (2000) (elements for unjust enrichment).

■ As for the negligence claim, the law is the same in both states, compare Smith v. United States, 207 F.Supp.2d 209, 214 (S.D.N.Y.2002), with Ladd v. County of San Mateo, 12 Cal.4th 913, 50 Cal. Rptr.2d 309, 911 P.2d 496, 498 (1996), with

one relevant exception. Both New York and California follow the economic loss doctrine, which bars the recovery of economic loss in negligence cases. California, however, but not New York, recognizes an exception to the economic loss doctrine—recovery for economic loss is not barred where there exists a "special relationship" between the parties. *See Ott v. Alfa–Laval Agri, Inc.,* 31 Cal.App.4th 1439, 37 Cal.Rptr.2d 790, 801–02 (1995). Nevertheless, as explained below, that exception has no application in this case. Accordingly, where there is no real conflict, the law of the forum state applies. *See Wall v. CSX Transp., Inc.,* 471 F.3d 410, 422–23 (2d Cir.2006) (citing *Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.,* 2 A.D.3d 150, 769 N.Y.S.2d 487, 489 (1st Dep't 2003)).

■ In addition, district courts are required to conduct a rigorous choice-of-law analysis at the class certification stage to determine whether there is commonality. *See, e.g., In re St. Jude Medical Inc.,* 425 F.3d 1116, 1120 (8th Cir.2005). Thus, it is usually more appropriate to conduct the choice-of-law analysis at that stage. *See Rios v. State Farm Fire & Cas. Co.,* No. 3:05–cv–00146, 2007 WL 80830, at *11 (S.D.Iowa 2007) ("[I]t would be more appropriate for the Court to address the commonality, i.e., conflicts of law analysis, during the class certification stage, after class discovery."). For now, I will apply New York law to plaintiff's claims.

## III. *The Merits*

### A. *Breach of Contract*

■ Under New York law, the elements of a breach of contract claim are (1) the existence of an agreement, (2) performance of the contract by the plaintiff, (3) breach of the agreement by the defendant, and (4) damages. *See Bridgeway Corp. v.*

*Citibank, N.A.,* 132 F.Supp.2d 297, 305 (S.D.N.Y.2001).

■ Here, Labajo has properly pled a breach of contract claim. First, she alleges the existence of a contract whereby defendants agreed to provide certain merchandise or services to Labajo in exchange for payment. (AC ¶ 87). Second, she alleges that she performed by paying for the merchandise and services. (*Id.* ¶¶ 57, 84). Third, she alleges that defendants breached by placing additional, undisclosed charges on her debit card after having represented that the magazines were free. (*Id.* ¶¶ 85, 88). Finally, she alleges damages as a result of defendants' breach. (*Id.* ¶¶ 85, 89).

Nevertheless, defendants argue that there was no breach because the terms of the contract were plainly stated in various documents, thus notifying Labajo that she could be charged for the magazines after the eighth issue if she did not cancel her subscription. Specifically, defendants assert that these terms were stated in: (1) the signature pad signed by Labajo, (2) the receipt, (3) the brochure describing the magazine promotion, and (4) the confirmation notice. (Def. Mem. at 2; *see* Best Buy Am. Ans. Exs. A–D; Time Am. Ans. Exs. 1–4). Thus, because the documentary evidence contradicts Labajo's allegations that those terms were not disclosed, defendants argue that they are entitled to judgment on the pleadings. *See, e.g., Matusovsky,* 186 F.Supp.2d at 400 (where plaintiff's allegations are contradicted by documentary evidence incorporated by reference, those allegations are subject to dismissal).

Defendants' arguments are rejected, for two reasons. First, although defendants argue that Labajo signed an electronic signature pad that authorized the charges on

her debit card,[5] there is some ambiguity in the documents—the exhibit that purports to show the display of the electronic signature pad does not include Labajo's signature. (*See* Best Buy Am. Ans. Ex. B). Indeed, Labajo's signature is shown in a separate exhibit, one without any disclosures. (*See* Best Buy Am. Ans. Ex. C). In the amended complaint, Labajo denies that the signature pad she signed disclosed that she would be charged, and I must assume that this assertion is true in the absence of clear documentation to the contrary. Defendants assert that they can connect Exhibits B and C—in other words, that they can demonstrate that Labajo signed the electronic signature pad containing the terms of the agreement. (*See* OA Tr. 14–15). The connection, however, is not apparent from the documents themselves. To show the connection, defendants would have to go outside the pleadings (and documents annexed thereto), as they would have to provide some testimony or other evidence to show that Labajo actually signed a signature pad that contained the disclosure. Of course, this would run afoul of the prohibition on considering matters outside the pleadings unless the motion is converted to one for summary judgment and the parties are given an opportunity "to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(c). As Labajo has not yet had an opportunity to conduct discovery, I decline to convert this motion to a summary judgment motion now.

Second, it is not apparent from the pleadings and defendants' documents that Labajo will be unable to prove any set of facts that would entitle her to relief on her breach of contract claim. The receipt and brochure (and confirmation notice, assuming Labajo received it in the mail)—which include the disclosures relied on by defendants—were not provided to Labajo until *after* she entered into the agreement with defendants. Thus, Labajo arguably did not agree to the undisclosed charges when she entered into the contract, and defendants' imposition of those charges without prior disclosure arguably amounted to a breach. In addition, there is a lack of clarity in the documents; the receipt, for example, lists the magazine as an item being purchased, but states the price as "$0.00," and the purported disclosure in the signature pad gives no price at all. Moreover, the register clerk purportedly told Labajo that she was getting a free subscription to *Sports Illustrated,* without disclosing that Labajo had an obligation to cancel the subscription after eight issues to avoid being charged for additional issues. The clerk's statements arguably were inconsistent with the disclosures in the documents that came after the fact; hence, an issue exists as to whether the provisions in the written disclosures were part of the contract.

In light of these circumstances and discrepancies, Labajo may very well be able to prove that there was a meeting of the minds as to her getting a free subscription, but no meeting of the minds as to her obligation to affirmatively cancel after eight issues to avoid future charges. Labajo's breach of contract claim survives.

### B. *Unjust Enrichment*

Unjust enrichment is an equitable remedy that is available in cases where there is no contract between the parties. *See Fercus, S.R.L. v. Palazzo,* No. 98 Civ.

---

5. The electronic signature pad allegedly provided the following: "Yes! Sign me up for Sports Illustrated's 8 issue trial offer with automatic renewal. I authorize Best Buy to give my credit or debit card to SI and SI to charge my card for the initial and six month renewal terms." (Time Am. Ans. Ex. 2; Best Buy Am. Ans. Ex. B).

7728(NRB), 2000 WL 1118925, at *4 (S.D.N.Y. Aug.8, 2000).

■ "To state a claim for unjust enrichment in New York, a plaintiff must allege that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution." *Kidz Cloz, Inc. v. Officially for Kids, Inc.,* 320 F.Supp.2d 164, 177 (S.D.N.Y.2004) (citing *Astor Holdings, Inc. v. Roski,* No. 01 Civ.1905(GEL), 2002 WL 72936, at *17 (S.D.N.Y. Jan.17, 2002) (citing *Louros v. Cyr,* 175 F.Supp.2d 497 (S.D.N.Y.2001))). Nevertheless, "the law abhors unjust enrichment." *Md. Cas. Co. v. W.R. Grace & Co.,* 218 F.3d 204, 212 (2d Cir.2000).

■ Plaintiff has properly pled an unjust enrichment claim, including alleging that: (1) defendants were enriched when they realized millions of dollars from the magazine promotion (AC ¶ 78); (2) defendants benefitted at plaintiff's expense (*id.* ¶ 80); and (3) defendants' retention of these gains would be unjust as they realized the money by withholding information from plaintiff about the promotion (*id.* ¶¶ 79, 81).

Moreover, Labajo alleges that interviews with former employees of Best Buy have revealed a company-wide practice whereby Best Buy managers directed employees not to disclose to customers that they could be charged for the magazines if they did not cancel their subscription. (*Id.* ¶ 70). If true, these facts, together with the omissions in the statements of the register clerk, the lack of clarity in the documents, the use of the figure "$0.00" in the receipt, the omission of the price from the disclosure in the signature pad (assuming there was any disclosure), and the giving of the brochure after-the-fact, could lead a reasonable jury to conclude that defendants had engaged in deceptive or misleading conduct and that it would be unjust to allow defendants to retain their gains.

Defendants argue that, even assuming Labajo has properly alleged the elements of an unjust enrichment claim, her unjust enrichment claim cannot survive because an enforceable contract governs the terms of the magazine promotion. (Def. Mem. at 9–10; Def. Reply Mem. at 6–7).

■ The argument is rejected. When there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim. *See In re Vivendi Universal, S.A.,* No. 02 Civ. 5571(RJH), 03 Civ. 2175(RJH), 2004 WL 876050, at *12 (S.D.N.Y. April 22, 2004). This is permissible under the liberal alternative pleading policy under Rule 8(e)(2) of the Federal Rules. *See MCI Worldcom Commc'ns, Inc. v. LD Wholesale Inc.,* No. 01 Civ. 6310(RO), 2002 WL 1483886, at *1 (S.D.N.Y. July 9, 2002). Indeed, it is far from clear that there was an enforceable contract here as to the magazine subscription. Labajo's assertion of a breach of contract claim does not preclude her from pleading an unjust enrichment claim in the alternative. Accordingly, Labajo's unjust enrichment claim survives.

### C. *Negligence*

■ Under New York law, a plaintiff must establish the following elements for a negligence claim: (1) defendant owed plaintiff a duty of care; (2) defendant breached that duty; and (3) the breach proximately caused plaintiff's injury. *See Smith v. United States,* 207 F.Supp.2d 209, 214 (S.D.N.Y.2002).

There is a longstanding New York rule, however, that economic loss is not recoverable under a theory of negligence. *See Dooner v. Keefe, Bruyette & Woods, Inc.*, 157 F.Supp.2d 265, 285 (S.D.N.Y. 2001) (citations omitted); *AT & T v. N.Y.C. Human Resources Adm.*, 833 F.Supp. 962, 982–85 (S.D.N.Y.1993) (upholding dismissal of negligence claims under economic loss rule because there was "no contention [that] ... alleged negligence resulted in personal injury or property damage").

Here, even assuming Labajo has pled the elements of a negligence claim, the claim is nevertheless barred by the economic loss rule, as she does not allege any personal injury or property damage. Rather, her allegations are purely limited to economic loss. Under these circumstances, her remedies are limited and she may not sue in negligence. *See Dooner*, 157 F.Supp.2d at 285; *Human Resources Adm.*, 833 F.Supp. at 982.

As noted above, there is an arguable conflict between New York and California law as to the negligence claim because under California law, there is an exception to the economic loss doctrine when a party can establish a "special relationship." The special relationship exception, however, is inapplicable here, and thus I need not resolve the potential conflict. The special relationship exception requires, for example, that the magazine promotion in this instance "intend[ ] to affect" plaintiff in a particular way, as opposed to all potential customers. *See Ott*, 37 Cal.Rptr.2d at 801–02. Here, the magazine promotion was not intended specifically for Labajo, and there was no "special relationship" between her and Best Buy or Time. She was one of many customers. As a result, the economic loss doctrine would still bar her negligence claim even if California law were applied.

Therefore the negligence claim is dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motion is granted in part and denied in part. Plaintiff's claims for negligence, breach of warranty, and unfair competition are dismissed. She may proceed on her claims for breach of contract and unjust enrichment.

A pretrial conference will be held on April 13, 2007, at 11:30 a.m. at 500 Pearl Street, New York, New York 10007, Courtroom 11A.

SO ORDERED.