Ulana ILLIANO, Plaintiff,

v.

The MINEOLA UNION FREE SCHOOL DISTRICT, Lorenzo Licopoli, individually and in his capacity as Superintendent of the Mineola Union Free School District, and Michael Nagler, individually and in his capacity as Deputy Superintendent of the Mineola Union Free School District, Defendants.

No. 08CV529 (ADS)(MLO).

United States District Court, E.D. New York.

Nov. 7, 2008.

Law Offices of Harry Weinberg by Harry Mark Weinberg, Esq., of Counsel, New York, NY, for Plaintiff.

Devitt Spellman Barrett, L.L.P. by Jeltje DeJong, Esq., of Counsel, Smithtown, NY, for Defendant Mineola Union Free School District.

Miranda & Sokoloff, LLP by Brian S. Sokoloff, Esq., of Counsel, Mineola, NY, Leeds Morelli & Brown by Rick Ostrove, Esq. of Counsel, Carle Place, NY, for Defendant Lorenzo Licopoli.

Callan, Regenstreich, Koster & Brady by Paul F. Callan, Esq., of Counsel, New York, NY, for Defendant Michael Nagler.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On February 8, 2008, Ulana Illiano ("the Plaintiff") initiated this action against the Mineola Union Free School District ("the School District"), District Superintendent Lorenzo Licopoli ("Licopoli"), and Deputy District Superintendent Michael Nagler ("Nagler") (collectively "the Defendants"). Thereafter, each of the Defendants filed a motion to dismiss the Complaint. On May 8, 2008, the Plaintiff filed an Amended Complaint seeking reinstatement to her former position and asserting: (i) a religion-based hostile work environment claim under N.Y. Executive Law § 296 ("New York Human Rights law" or "NYHRL") against Licopoli and the School District; (ii) a gender-based hostile work environment claim under NYHRL; (iii) retaliation claims under NYHRL; (iv) violations of N.Y. Civil Rights Law § 40 and N.Y. Civil Service Law § 75; (v) constitutional violations under 42 U.S.C. § 1983; and (vi) a defamation claim against Nagler and Licopoli ("the individual Defendants").

On June 9, 2008, Nagler filed a motion to dismiss the Amended Complaint, however, neither the School District nor Licopoli renewed their motions to dismiss. Nonetheless, all of the Defendants' motions will be considered in light of the Amended Complaint. Presently before the Court are the Defendants' motions to: (i) dismiss under FED.R.CIV.P. 12(b)(6); and (ii) strike certain paragraphs of the Amended Complaint under FED.R.CIV.P. 12(f).

### I. BACKGROUND

The Plaintiff worked for the School District for eight years between September of 1999 and June of 2007. She started out as a substitute clerical worker and eventually became an administrative assistant to the District Superintendent. In the latter position, the Plaintiff reported to Licopoli but also received direction from and was managed by Nagler. The Plaintiff alleges that between 2005 and 2007, the individual Defendants created a hostile work environment by, among other things, making sexually offensive and anti-Semitic comments.

The Plaintiff avers that Nagler told her that she "could be one of his girls," and that he "could have [her] anytime he wanted to." The Plaintiff further alleges that Nagler maintained an inappropriate relationship with his other administrative assistant by "constantly placing his hands on [her] body" and speaking to her with profane and sexually suggestive language. The Plaintiff also contends that, at a meeting, Nagler referred to former District Assistant Superintendent Shari Camhi ("Camhi") as a "cunt".

The Plaintiff contends that Licopoli also referred to Camhi as a "cunt" and on at least one occasion called Camhi a "Jewish

cunt". The Plaintiff alleges that Licopoli made a number of other anti-Semitic comments including: a remark that an unnamed Jewish employee had a "fucking real Jew attitude"; disparaging remarks about the Jewish holidays; telling the Plaintiff that one Jewish employee was "okay" because she wasn't "a practicing Jew" while another Jewish employee was not "okay" because she "strut[ted] around ... with her Jewish star"; telling the Plaintiff that he wasn't used to "all th[e] Jew holidays" because there were no Jews in upstate New York where he was raised.

Although the Plaintiff is not Jewish, she claims that she found these comments to be offensive and repeatedly so informed Licopoli. According to the Plaintiff, after she told Licopoli that she intended to complain to the Board of Education about his and Nagler's offensive comments, Licopoli threatened that if she did so he would not write her a positive reference when she was terminated or forced to resign. The Plaintiff also alleges that the individual Defendants reminded her that it would not be in the best interests of her daughter, a student in the district, for the Plaintiff to continue voicing complaints about their behavior.

Nonetheless, the Plaintiff eventually complained about the individual Defendants in an email to Camhi, who was by then no longer employed by the School District. In the email, the Plaintiff told Camhi about the alleged offensive behavior by the individual Defendants and noted to Camhi that she believed Nagler was giving preferential treatment to the other administrative assistant because she and Nagler were carrying on a flirtatious relationship. The Plaintiff contends that Licopoli managed to obtain a copy of this email despite the fact that she sent it to Camhi from home using her personal email account. The Plaintiff alleges that Licopoli must have obtained the email by maintaining access to the School District email account that Camhi used when she was the Assistant District Superintendent. On April 9, 2008, Nagler filed a lawsuit against the Plaintiff in New York State Supreme Court, Nassau County, alleging that the Plaintiff defamed him in this email.

The Plaintiff maintains that, after Licopoli intercepted her email, he advised the Plaintiff she would likely be fired for having breached her confidential status as a School District employee. According to the Plaintiff, Licopoli used the email as a pretext for seeking her termination when in fact he actually sought to fire her because of her complaints about his and Nagler's offensive behavior. The Plaintiff contends that in May of 2007, Licopoli gave the Plaintiff three options: apologize to Nagler for her statements about him; resign; or be fired. According to the Plaintiff, when she refused to do any of the above, Licopoli instructed the Plaintiff to type and sign a resignation letter he had prepared for her. Although the Plaintiff signed the letter, she maintains that she was constructively discharged because she was coerced into resigning.

The Plaintiff alleges that after she tendered her resignation, she spoke to School District Board of Education members Lawrence Carroll, Larraine Salvatore, John McGrath, Mary Ellen Williams, and Stephen Siniski, who each informed her that Licopoli told them she was fired because she breached her confidential status as a School District employee. The Plaintiff also avers that Nagler told his administrative assistant, Virginia Schepis, and District Assistant Superintendent for Business and Finance, Maureen Judge, that the Plaintiff was terminated for having sent personal emails from her work account. The Plaintiff contends that the individual Defendants defamed her in making these statements.

The Plaintiff also maintains that, following her alleged constructive discharge, the School District warned her that she would be sued if she filed a lawsuit against the School District, Licopoli, or Nagler.

## II. DISCUSSION

### A. The Motion to Dismiss Standard

 In considering a 12(b)(6) motion to dismiss, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir.2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In this regard, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir.2005); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999).

 A complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has interpreted *Twombly* to require that a complaint "allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir.2007).

 "When a plaintiff amends its complaint while a motion to dismiss is pending" the court may "den[y] the motion as moot [or] consider[ ] the merits of the motion in light of the amended complaint." *Roller Bearing Co. of America, Inc. v. American Software, Inc.*, 570 F.Supp.2d 376, 384 (D.Conn.2008). Here, although

Licopoli and the School District did not renew their motions to dismiss after the filing of the Plaintiff's Amended Complaint, the Court chooses to analyze each of the Defendants' 12(b)(6) motions in light of the Amended Complaint.

### B. The Standard for Hostile Work Environment Claims

 The Plaintiff's hostile work environment claim is predicated upon NYHRL § 296 which provides, in pertinent part, that "it shall be unlawful discriminatory practice for an employer ... because of creed ... [or] sex ... to discharge from employment such individual in compensation or in terms, conditions or privileges of employment." "A supervisor is an 'employer' for purposes of establishing liability under the [NYHRL] if that supervisor actually participates in the conduct giving rise to [the] discrimination." *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir.2004) (internal citation omitted). The elements of a hostile work environment claim under NYHRL are identical to the elements required under the equivalent federal anti-discrimination laws. *See Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir.2006) (citing *Forrest v. Jewish Guild for the Blind*, 309 A.D.2d 546, 552, 765 N.Y.S.2d 326, 332–33 (1st Dep't 2003)).

 It is well settled that, as a threshold matter, a plaintiff asserting a hostile work environment claim must allege that she is a member of a protected class and that she "was subjected to the hostility because of her membership in [that] protected class." *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir.1999). If this threshold is met, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive—that is ... creates an environment that a reasonable person would find hostile or abusive";

(2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal citations omitted).

The Supreme Court has observed that courts examining hostile work environment claims should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 605 (2d Cir.2006) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir.2001). In other words, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

In the context of a 12(b)(6) motion, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Patane*, 508 F.3d at 113 (citing *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir.2003)). In the context of a motion to dismiss, courts "have repeatedly cautioned against setting the bar too high." *Id.*

### 1. Plaintiff's Religion–Based Hostile Work Environment Claim

The Plaintiff contends that Licopoli's alleged anti-Semitic comments created a work environment permeated by religious discrimination. However, because the Plaintiff is admittedly not Jewish, she cannot show that she was subjected to hostility because of her *membership* in a protected class. *See Smith v. AVSC Intern., Inc.*, 148 F.Supp.2d 302, 310 (S.D.N.Y.2001) (observing that "other employees targeted must be in the same protected class as the plaintiff for the hostile work environment claim to withstand a motion to dismiss"). Accordingly, the Plaintiff's religion-based hostile work environment cause of action must be dismissed.

### 2. Plaintiff's Gender–Based Hostile Work Environment Claim

The Plaintiff alleges that Nagler referred to another woman, Camhi, as a cunt on one occasion; told the Plaintiff that she could "be one of his girls" and that he "could have [her] any time he wanted to"; and maintained an inappropriate relationship with his other administrative assistant by "constantly placing his hands on [her] body" and speaking to her with profane and sexually suggestive language. The Plaintiff alleges that Licopoli also referred to Camhi as "cunt" and a "Jewish cunt".

On these facts, the Plaintiff has offered allegations that are sufficient to survive the Defendants' motions to dismiss. The individual Defendants' comments and epithets were such that a reasonable employee could find that her employment had been altered for the worse by gender-based hostility.

## C. Plaintiff's Retaliation Claims

█ NYHRL § 296(1)(e) provides, in pertinent part, that "it shall be an unlawful discriminatory practice [f]or any employer ... to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article ..." To establish a prima facie case of retaliation under the NYHRL, the Plaintiff must show: (1) that she engaged in a protected activity; (2) that the employer was aware of the protected activity; (3) that the employer took adverse action against the plaintiff; and (4) that there is a causal connection between the protected activity and the adverse action. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir.2006); *Forrest*, 786 N.Y.S.2d at 396, 819 N.E.2d 998.

█ With respect to the first element, participation in protected activity, "the plaintiff need not establish that the conduct she opposed was actually a violation of [the applicable antidiscrimination statute], but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute." *Galdieri–Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 292 (2d Cir.1998) (internal citation omitted). With respect to the causation element, the Second Circuit has required a plaintiff to show that "a retaliatory motive played a part in the adverse employment action." *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir.2001) (internal quotation marks omitted). "Where multiple motives are possible, plaintiff does not have to show that a retaliatory motive [was] the sole cause of the adverse employment action." *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir.2001).

█ Here, it is clear that the Plaintiff "possessed a good faith, reasonable belief that" she was speaking out against gender discrimination. *Galdieri–Ambrosini*, 136

F.3d at 292. As to the second element of the prima facie case, it is beyond dispute that the Defendants were aware of the Plaintiff's protected activity as she complained to both directly. With respect to the third element, the Defendants argue that the Plaintiff did not suffer an adverse employment action because she resigned of her own free will. The Plaintiff counters that she was constructively discharged because she was coerced into resigning.

█ "Constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Morris v. Schroder Capital Management Intern.*, 481 F.3d 86, 88 (2d Cir.2007) (internal citation omitted). According to the Plaintiff, in May of 2007, Licopoli gave her three options: apologize to Nagler for the complaints she made about him; resign; or be fired. When she refused to do any of the three, he instructed her to type and sign her own resignation letter. Under these facts, the Court finds that the Plaintiff has offered allegations that are sufficient to establish she was constructively discharged. *See Ferraro v. Kellwood*, 440 F.3d 96, 101 (2d Cir. 2006) (observing that a finding of constructive discharge is appropriate where work conditions are "so intolerable that a reasonable person in the employee's position would have felt compelled to resign").

In order to establish the final element of a prima facie case of retaliation, the Plaintiff must show that "a retaliatory motive played a part in the adverse employment action." *Cifra*, 252 F.3d at 216. The Defendants argue that the Plaintiff resigned because Licopoli confronted her about misusing her work email account. The Plaintiff counters that the email was merely a pretext for her discharge and that Licopoli's actual reason for forcing her out was

that she had complained about his and Nagler's conduct. Viewing these competing factual claims in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has adduced facts sufficient to state a plausible claim that a retaliatory motive played a part in her constructive discharge. Accordingly, the Plaintiff has offered allegations that are sufficient to sustain her retaliation cause of action.

The Plaintiff also asserts a separate retaliation claim against Nagler claiming that the defamation lawsuit he filed against her was an adverse action designed to deter her from continuing with her own lawsuit. The Second Circuit recently held, in the wake of the Supreme Court's decision in *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), that "the anti-retaliation provision [of Title VII] . . . is not limited to discriminatory actions that affect the terms and conditions of employment." *Kessler v. Westchester County Dept. of Social Services*, 461 F.3d 199, 207 (2d Cir.2006) (citing *Burlington*, 126 S.Ct. at 2412–13). In reaching this conclusion, the Supreme Court "reasoned that the means by which an employer can retaliate against an employee are not limited to altering his compensation, terms, conditions, or privileges of employment," and that "[a] provision limited to employment-related actions would not deter the many forms that effective retaliation can take." *Kessler*, 461 F.3d at 208 (citing *Burlington*, 126 S.Ct. at 2412–13).

▉ Thus, after *Burlington*, a plaintiff can prevail on a retaliation claim if she can "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler*, 461 F.3d at 207 (citing *Burlington*, 126 S.Ct. at 2415). Here, at the pleading stage, the Plaintiff can establish that Nagler's lawsuit is the type of adverse action that might dissuade a reasonable former employee from bringing a discrimination claim. In this regard, that the Plaintiff was no longer a School District employee when Nagler's suit was filed in April of 2008 is immaterial.

As the Supreme Court has observed, the "primary purpose" of the anti-retaliation provisions is to "maintain[ ] unfettered access to statutory remedial mechanisms." *Burlington*, 126 S.Ct at 2412–13. This purpose is furthered by extending the NYHRL's anti-retaliation protections to this case where the Plaintiff alleges that her former employer explicitly threatened to sue her if she sought to vindicate her rights. Accordingly, the Plaintiff's retaliatory lawsuit claim survives Nagler's motion to dismiss.

### D. Plaintiff's Claim Under Civil Rights Law § 40–c

N.Y. Civil Rights Law § 40–c provides, in pertinent part, that:

(1) All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof (2) No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability . . . be subjected to any discrimination in his or her civil rights . . . by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

NY Civil Rights Law § 40–c.

▉ "A valid cause of action based on a violation of [the NYHRL] exposes the defendant to civil penalties under Section 40–c of the New York Civil Rights Law, recoverable by the person aggrieved." *Ganzy v. Allen Christian School*, 995 F.Supp. 340, 350 (E.D.N.Y.1998). In other words,

"[f]acts sufficient to sustain a cause of action under [NYHRL] will support a cause of action under section 40–c of the Civil Rights Law." *Id.* Here, because the Plaintiff's retaliation claims under NYHRL § 296(e) have survived, the Plaintiff has alleged facts sufficient to sustain a cause of action under N.Y. Civil Rights Law § 40–c. Accordingly, the Defendants' motions to dismiss this claim are denied.

### E. Plaintiff's Claim Under Civil Service Law § 75(1)

New York Civil Service Law § 75(1) provides, in pertinent part, that:

> A person ... holding a position by permanent appointment in the competitive class of the classified civil service ... shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section.
>
> N.Y. Civil Service Law § 75(1).

The Second Circuit has "recognized that § 75 gives covered employees a property interest in their employment, so that they may not be terminated without notice and hearing." *Ciambriello v. County of Nassau,* 292 F.3d 307, 314 (2d Cir. 2002). Here, the Plaintiff contends that her alleged constructive discharge violated the statute because she was a covered civil service employee who was removed without being afforded a proper hearing. Thus, the Court finds that the Plaintiff has alleged facts sufficient to support this claim. Accordingly, the Defendants' motions to dismiss the Plaintiff's claim under N.Y. Civil Service Law § 75(1) are denied.

### F. Plaintiff's § 1983 Claims

42 U.S.C. § 1983 permits an action to be brought against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Thus, in order to state a valid claim under § 1983, a plaintiff must show that the conduct in question deprived a person of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and that the acts were attributable at least in part to a person acting under color of state law. *Washington v. County of Rockland,* 373 F.3d 310, 315 (2d Cir.2004). "An official 'acts under color of state law' for Section 1983 purposes when the official exercises a power possessed by virtue of state law and made possible only because the wrongdoer is cloaked with the authority of state law." *Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir.2002) (internal quotation marks omitted).

#### 1. As to the School District

In *Monell v. Dep't of Social Servs. of the City of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court found that municipalities could be sued under § 1983 as "persons" within the meaning of that statute only "when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." *Reynolds v. Giuliani,* 506 F.3d 183, 190 (2d Cir.2007). Here, the Plaintiff has not offered any facts that could demonstrate that the behavior complained of was implemented pursuant to School District policy or custom. Accordingly, the Plaintiff's § 1983 claims against the School District must be dismissed.

#### 2. As to the Individual Defendants

Here, the individual Defendants were acting within their official capacity as supervisory members of a public school dis-

trict, and therefore acted under color of state law. The Court must determine, then, whether the Plaintiff has stated a valid cause of action for each of her substantive claims under § 1983.

### a. Plaintiff's Freedom of Speech Claim

The Plaintiff alleges that the individual Defendants violated her freedom of speech by forcing her to resign after she complained to Camhi about their conduct. Supreme Court precedent teaches that "public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.*; *see Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) ("So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively").

A public employee claiming First Amendment retaliation under § 1983 must demonstrate that: "(1) [her] speech addressed a matter of public concern; (2)[she] suffered an adverse employment action; and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that [her] speech was a motivating factor in the determination." *Feingold*, 366 F.3d at 160 (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999)). Speech is on a matter of public concern "if it relates 'to any matter of political, social, or other concern to the community.'" *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir.2003) (quoting *Connick*, 461 U.S. at 146, 103 S.Ct. 1684). In analyzing whether speech addresses a matter

of public concern, courts must "focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Lewis v. Cowen*, 165 F.3d 154, 163–64 (2d Cir.1999). The Second Circuit has recognized that an expression of "dissatisfaction with working conditions is not, by itself, speech on matters of public concern." *Tiltti v. Weise*, 155 F.3d 596, 603 (2d Cir. 1998); *see Lewis*, 165 F.3d at 164 ("[S]peech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern.").

Here, based upon the allegations set forth in the Amended Complaint, the Plaintiff's conversation with Camhi appears to have merely been a discussion about the personal problems she was experiencing with the office environment and not an effort to speak out on a matter of public concern. Although not dispositive, it is relevant that here the speech at issue was a private email the Plaintiff sent to only one person.

The Court's conclusion may well have been different if the speech at issue was, for example, a letter to the editor of a newspaper complaining about the alleged unlawful conduct. However, under these circumstances, it is evident that the Plaintiff was airing personal grievances; not seeking to raise awareness about gender and religious discrimination in the Superintendent's office. Thus, the Court finds that the Plaintiff's email did not address a matter of public concern. Accordingly, the Defendants' motions to dismiss the Plaintiff's freedom of speech claim under § 1983 are granted.

### b. Plaintiff's Freedom of Association Claim

The Plaintiff alleges that Licopoli violated her right to freedom of associ-

ation "when [he] demanded she resign ... because she associated with, complained about discrimination against and defended the rights of Jews in the workplace." Courts have "recognized two types of associational rights: an individual's right to associate with others in intimate relationships and a right to associate with others for purposes of engaging in activities traditionally protected by the First Amendment, such as speech and other expressive conduct." *Economic Opportunity Com'n of Nassau County, Inc. v. County of Nassau*, 106 F.Supp.2d 433, 439 (E.D.N.Y. 2000) (citing *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir.1999)). "Expressive association claims," such as the Plaintiff's claim that she was retaliated against for associating with Jews, "are considered to be the equivalent of free speech claims, since the expressive conduct alleged is inextricably linked to protected speech." *Id.* (citing *Birmingham v. Ogden*, 70 F.Supp.2d 353, 368 (S.D.N.Y.1999)). Here, the Plaintiff's freedom of association claim is duplicative of her inviable freedom of speech claim. Accordingly, the Defendants' motions to dismiss the Plaintiff's freedom of association claim under § 1983 are granted.

### c. Plaintiff's Equal Protection Claim

The Amended Complaint alleges that the individual Defendants violated the Plaintiff's 14th Amendment right to equal protection by discriminating against her on the basis of gender and retaliating against her for complaining about gender discrimination. The Plaintiff's equal protection claim parallels her NYHRL claim and "[t]he elements of one are generally the same as the elements of the other and the two must stand or fall together." *Feingold*, 366 F.3d at 159; *see Saulpaugh v. Monroe Cmty. Hospital*, 4 F.3d 134, 143 (2d Cir.1993) (noting that the Second Circuit has "upheld a Section 1983 claim against a public official for improper sexual conduct toward an employee that creat-

ed a hostile work environment"). The Court has found that the Plaintiff has offered facts sufficient to state a gender-based hostile work environment claim under the NYHRL. It follows, then, that she has also stated a viable gender-based equal protection claim under § 1983 because the elements of these separate causes of action are identical. Accordingly, the individual Defendants' motions to dismiss the Plaintiff's equal protection claim are denied.

### d. Plaintiff's Due Process Claim

The Plaintiff alleges that the individual Defendants violated her due process rights by forcing her to resign without affording her a fair hearing. The question of whether the Amended Complaint adequately pleads a due process claim turns on whether the Plaintiff had a "property interest" in her position as an administrative assistant, and whether "due process required a hearing prior to the deprivation." *Dwyer v. Regan*, 777 F.2d 825, 829 (2d Cir.1985). Here, the Plaintiff adequately alleges that she held a property interest in a competitive civil service title under New York State law and that the Defendants violated N.Y. Civil Service Law § 75 when they forced her to resign without a proper hearing. *See Dwyer*, 777 F.2d at 830 (finding that plaintiff pled sufficient due process claim under § 1983 where he alleged that he was fired from his competitive civil service position in violation of N.Y. Civil Service Law § 75). Accordingly, the Defendants' motions to dismiss the Plaintiff's due process claim under § 1983 are denied.

### G. Plaintiff's Defamation Claims Against the Individual Defendants

To assert a viable cause of action for defamation under New York law, a Plaintiff must allege that: (i) a false de-

famatory statement of fact; (ii) of and concerning the plaintiff; (iii) was published to a third party; (iv) made with the applicable level of fault on the part of the speaker; and (vi) caused special harm or constituted defamation per se. *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001). Among the type of statements that have been considered defamatory per se are those that "tend to injure the plaintiff in his or her trade, business or *profession*." *Id.* at 271 (citing *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992)) (emphasis added). Under New York C.P.L.R. § 3016(a), the Plaintiff is required to set forth "the particular words complained of" and the person or persons to whom the alleged defamatory comments were made. *Mills v. Miteq, Inc.*, 2008 WL 350922, at *2 (E.D.N.Y. Feb.7, 2008).

■ The Plaintiff claims that the individual Defendants defamed her when they told members of the Board of Education and certain School District employees that the Plaintiff had been fired for "breach of her confidential status as an employee" and sending personal emails from her work account. There is no question that the remarks were of and concerning the Plaintiff. Likewise, there is no real dispute as to whether the statements were published or whether the statements were defamatory. However, there is a dispute as to whether the statements were in fact true. *See Ciuffetelli v. Apple Bank For Savings*, 208 F.3d 202 (2d Cir.2000) (citing *Heins v. Board of Trustees*, 237 A.D.2d 570, 571, 655 N.Y.S.2d 996, 996 (2d Dep't 1997)) ("Truth is an absolute defense to an action based on defamation").

The individual Defendants maintain that their statements were true because the Plaintiff *was* asked to resign for misuse of her work email account. As discussed, the Plaintiff alleges that she was actually forced to resign because of her complaints and that the individual Defendants' therefore did not tell the truth when they told others that she was fired for misusing her work email account. However, it is not appropriate, at the pleading stage, for the Court to decide the parties' competing factual claims. *See Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001) (noting that the "falsity . . . inquir[y] typically requires discovery"). Drawing all reasonable inferences in favor of the Plaintiff, the facts set forth in the Amended Complaint are sufficient to state a plausible claim that the Defendants' statements were false and that they knew them to be false.

■ As to the harm element, it is clear that the statements at issue are defamatory per se. *See Oparaji v. Atlantic Container Line*, 2008 WL 4054412, at *10 n. 15 (S.D.N.Y. Aug.28, 2008) (citing *Gatz v. Otis Ford, Inc.*, 262 A.D.2d 280, 691 N.Y.S.2d 113, 114 (2d Dep't 1999)) (noting that a statement is defamatory per se when it accuses an individual of misconduct or unfitness in their profession). Here, the individual Defendants' alleged statement about the circumstances of the Plaintiff's discharge clearly implicate her in the improper performance of her duties. *See Chiavarelli v. Williams*, 256 A.D.2d 111, 113, 681 N.Y.S.2d 276 (1st Dep't 1998) (finding that "the challenged statements must be more than a general reflection upon [the plaintiff's] character or qualities, and must suggest improper performance of his duties or unprofessional conduct") (internal quotation marks omitted). Thus, the Plaintiff has met her burden, at this stage, to satisfy all of the elements of a defamation claim under New York law. Accordingly, the individual Defendants' motions to dismiss the Plaintiff's defamation claim are denied.

## H. Defendants' Motions to Strike

 FED.R.CIV.P. 12(e) permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." *Ricketts v. City of Hartford,* 74 F.3d 1397, 1415 (2d Cir.1996). "Typically, to prevail on a Rule 12(f) motion, the defendant must demonstrate ... that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Dolan v. Fairbanks Capital Corp.,* 2008 WL 4515932, at *1 (E.D.N.Y. Sep.30, 2008). "Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so." *Id.* at 11 (internal citation omitted).

 The School District and Licopoli argue that the Plaintiff cannot maintain a religion-based hostile work environment claim, and therefore, the allegations pertaining to Licopoli's alleged anti-Semitic remarks should be stricken from the Amended Complaint. Nagler argues that the allegations contained in ¶¶ 9, 13, 16–22, 25, and 26 pertaining to his alleged offensive conduct must also be stricken. The Court disagrees.

Although the Plaintiff's religion-based hostile work environment claim has been dismissed, the allegations underlying that claim are still relevant to establishing the overall office environment. The allegations that Nagler seeks to strike are self-evidently material because they relate to the Plaintiff's surviving gender-based hostile work environment claim and her retaliation claims. Accordingly, the Defendants' motions to strike parts of the Amended Complaint are denied.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Defendants' motions to dismiss are GRANTED as to the Plaintiff's Third cause of action for reli-gion-based hostile work environment discrimination, Fourth cause of action for retaliation based upon her complaints about religious discrimination, and Fifth Cause of action for retaliation based upon her association with persons of another religion, and it is further

**ORDERED,** that the Defendants' motions to dismiss the Plaintiff's Eighth cause of action are **GRANTED** as to the freedom of speech and freedom of association claims, and **DENIED** as to the equal protection and due process claims, and it is further

**ORDERED,** that the Defendants' motions to dismiss are **DENIED** as to the Plaintiff's First cause of action for gender-based hostile work environment discrimination, Second cause of action for retaliation based upon her complaints of gender discrimination, Tenth cause of action for the retaliatory filing of a lawsuit, Sixth cause of action under N.Y. Civil Rights Law § 40–c, Seventh cause of action under N.Y. Civil Service Law § 75(1), and Ninth cause of action for defamation, and it is further

**ORDERED,** that the Defendants' motions to strike parts of the Amended Complaint are **DENIED.**

**SO ORDERED.**