NEWMARKETS PARTNERS
LLC et al., Plaintiffs,

v.

Sal. OPPENHEIM Jr. & CIE
et al., Defendants.

No. 08 Civ. 4213(WHP).

United States District Court,
S.D. New York.

July 28, 2009.

Bernard Daskal, Esq., Lawrence G. Lee, Esq., Lynch Daskal Emery LLP, New York, NY, L. Peter Farkas, Esq., Richard S. Toikka, Esq., Farkas & Toikka LLP, Washington, DC, for Plaintiffs.

Frederick W. Reif, Esq., Biedermann, Reif, Hoenig & Ruff, New York, NY, for Defendant CAM Private Equity Consulting & Verwaltungs GmbH.

Daniel N. Arshack, Esq. Arshack, Hajek & Lehrman PLLC New York, N.Y. for Defendant BVT Beratungs-, Verwaltungs-, und Treuhandgesellschaft für Internationale Vermörgensanlagen MBH.

James P. Tallon, Esq., Sherman & Sterling, LLP, New York, NY, for Defendant Sal. Oppenheim Jr. & CIE. S.C.A.

Gary C. Adler, Esq., Roetzel & Andress, Washington, D.C., for Defendant Marie–France Mathes.

*MEMORANDUM & ORDER*

WILLIAM H. PAULEY III, District Judge.

Plaintiffs NewMarkets Partners LLC ("NewMarkets"), CAM NewMarkets Partners LP, and Tomoko Tatara ("Tatara") (collectively, "Plaintiffs")[1] bring this action alleging false advertising under the Lanham Act, 15 U.S.C. § 1051. *et seq.*, along with numerous state law claims. Defendants Sal. Oppenheim Jr. & CIE. S.C.A. ("Oppenheim"), CAM Private Equity Consulting & Verwaltungs GmbH ("CAM"), and BVT Beratungs-, Verwaltungsund Treuhandgesellschaft für Internationale Vermörgensanlagen MBH ("BVT–B") move to dismiss the First Amended Complaint under Rules 12(b)(1) and 12(b)(6). BVT–B also moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2). For the following reasons, those motions are granted in part and denied in part. BVT–B is dismissed from this action for lack of personal jurisdiction. The civil conspiracy claim against Oppenheim and CAM is dismissed. The unfair competition claim against Oppenheim is dismissed. All other motions are denied.

## BACKGROUND

### I. *The Parties*

Tatara and Mathes are former employees of the World Bank where they worked on investments in emerging market economies. (First Amended Verified Complaint dated July 9, 2008 ("First Amended Complaint" or "First Amended Compl.") ¶¶ 39–42.) Oppenheim is a European private bank focused on asset management and investment banking for affluent individuals, corporations, and institutional investors. (First Amended Compl. ¶ 43.) CAM is a German investment group that makes private equity fund investments in the United States and Europe and provides administrative services for private equity funds. (First Amended Compl. ¶ 44.) Although CAM is based in Cologne, Germany, it has operations in the United States including a wholly-owned subsidiary in Connecticut. (First Amended Compl. ¶¶ 5, 44.) BVT–B is a German asset management firm. (First Amended Compl. ¶ 46.)

### II. *The Joint Venture*

In November 2006, Tatara, and Mathes began discussions with CAM about a joint venture to manage investment funds in new private equity markets. (First Amended Compl. ¶¶ 27, 48.) In March 2007, Tatara and Mathes formed NewMarkets as the vehicle for their involvement in the joint venture with CAM. NewMarkets and CAM styled their joint venture as a partnership under the name, CAM–NewMarkets Partners LP (the "Joint Venture").[2] (First Amended

---

**1.** The First Amended Complaint named Tatara as a Plaintiff and Marie–Frances Mathes ("Mathes") as a Defendant. After the motions to dismiss were filed, Plaintiffs settled with Mathes, and interposed a Second Amended Complaint. Because Mathes realigned her interests with NewMarkets following the settlement, Tatara was dropped as a Plaintiff. In all other respects, the Second Amended Complaint is substantially similar to the First Amended Complaint. Thus, while this Memorandum and Order references are to the First Amended Complaint, this Court also considers the pending motions in light of the Second Amended Complaint.

**2.** The First Amended Complaint describes CAM and NewMarkets as each owning 50% of the Joint Venture (First Amended Compl. ¶ 3), but Defendants claim that NewMarkets in fact owns 100%. (Declaration of James Tallon dated Oct. 15, 2008, Exs. A–D: Documents regarding the formation and structure of the Joint Venture). Because this Court finds that

Compl. ¶ 28.) CAM agreed to invest $3 million in the Joint Venture, while New-Markets contributed its members' reputations, experience, investment model, and contacts in new private equity markets. (First Amended Compl. ¶ 28.)

The Joint Venture Agreement provided that: (1) shared confidential information would only be used to advance the Joint Venture; (2) investments by NewMarkets, CAM, and their affiliates in new private equity markets (i.e., private equity markets outside of Western Europe and North America) would be made exclusively through the Joint Venture; and (3) neither Joint Venturer was authorized to act as agent for the other. (First Amended Compl. ¶¶ 29, 51.) The exclusivity provision applied to CAM and NewMarkets as well as their respective "affiliates." (First Amended Compl. ¶ 51.) The Joint Venture Agreement defined "affiliate" as companies that are "controlled by, control[ ], or [are] under common control" by either NewMarkets or CAM. (First Amended Compl. Ex. A: Joint Venture Agreement dated Mar. 14, 2007, at 1.) "Control" was defined as "the possession, directly or indirectly, of power to direct . . . management or policies ( . . . through ownership of securities . . . ) . . . . " (Joint Venture Agreement at 1.)

The Joint Venture planned to establish an investment fund, known as the CAM-NewMarkets Partners Fund I (the "Core Fund"). (First Amended Compl. ¶¶ 28–30, 54–60.) While the Joint Venture prepared a prospectus embodying Plaintiffs' proprietary investment model, the Core Fund never received any investments. (First Amended Compl. ¶ 113.)

### III. The German Funds

Plaintiffs allege that CAM and BVT–B improperly used Plaintiffs' draft prospectus to prepare private placement memoranda of their own to market two separate German funds (the "German Funds"), the BVT–CAM Private Equity Global Fund VI and the BVT–CAM Private Equity New Markets Fund. (First Amended Compl. ¶¶ 26, 30–32; 61–72.) These private placement memoranda falsely identified Tatara, Mathes, and NewMarkets as involved in management of the funds, used Tatara's and Mathes's names and experience without their permission, and misappropriated their fund model. (First Amended Compl. ¶¶ 30–32, 61–72.) Plaintiffs also allege that these false statements misled the investing public, violated the Joint Venture Agreement, and created numerous conflicts of interest preventing launch of the Core Fund. (First Amended Compl. ¶¶ 32, 36, 98, 100, 101, 104–105, 108–111, Ex. C: Dewey & LeBoeuf Memorandum dated Dec. 17, 2007). Plaintiffs claim misappropriation of their intellectual property and allege a conspiracy among Defendants to block Plaintiffs' entry into the market. (First Amended Compl. ¶¶ 26–27, 36, 67–72.)

### IV. Oppenheim & CAM

In July 2007, Oppenheim announced a "strategic partnership" with CAM and touted the Joint Venture's expertise as a prized component that would contribute to Oppenheim's international expansion. (First Amended Compl. ¶ 45.) In October 2007, Oppenheim informed Plaintiffs that it was launching a private equity group in Hong Kong to invest in Asian funds in direct competition with the Joint Venture. (First Amended Compl. ¶¶ 95–96.) In November 2007, Oppenheim revealed that it had acquired a majority stake in CAM. (First Amended Compl. ¶ 45.) Thus, Plaintiffs contend that Oppenheim is an

---

Defendants' motion to dismiss for lack of derivative standing is moot, it need not delve into the maze of entities that own the Joint Venture.

affiliate of CAM under the Joint Venture Agreement. (First Amended Compl. ¶ 97.)

## DISCUSSION

### I. *Personal Jurisdiction Over BVT–B*

#### A. *Legal Standard*

"On a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir.2003); *see also Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.1991) (plaintiff "bears the burden of proving by a preponderance of the evidence that personal jurisdiction exists"). "Where plaintiff has engaged in jurisdictional discovery . . . the plaintiff's prima facie showing . . . must include an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." *Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, No. 05 Civ. 10773(RMB), 2007 WL 1489806, at *2 (S.D.N.Y. May 21, 2007) (quoting *Magnetic Audiotape*, 334 F.3d at 206 (internal quotation marks omitted)). However, all pleadings must be construed in a light most favorable to plaintiff, and all doubts resolved in plaintiff's favor. *See Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir.2008). A federal court's jurisdiction over non-resident defendants is governed by the law of the state in which the court sits and the requirements of due process. *See Henderson v. INS*, 157 F.3d 106, 123 (2d Cir.1998).

### B. *BVT–B's Contacts With The United States*

BVT–B is a private corporation organized in Munich, Germany, (Declaration of Robert List dated Oct. 2, 2008 ("List Decl.") ¶ 3), and wholly-owned by BVT Holding GmbH & Company KG ("BVT Holding") (Declaration of Lawrence Lee dated Dec. 19, 2008 ("Lee Decl."), Ex. 48: Deposition of Robert List dated Dec. 1, 2008 ("List Depo.") at 20.) BVT Holding is owned by Harald von Scharfenberg. (List Depo. at 36.) BVT–B's principal business is selling shares of funds created and managed by BVT Holding.[3] (List Depo. at 56–57.) BVT–B markets its funds primarily in Germany and Austria. (List Depo at 73; List Decl. ¶ 5.) All of the investors in the German Funds are located in Germany with the exception of four investors who are located in Switzerland, the Netherlands, Austria, and Mozambique, respectively. (List Decl. ¶ 7.) BVT–B invests in funds managed by Merrill Lynch in New York. (List Depo. at 120–21.) While BVT–B operates an interactive website accessible in New York, it neither markets nor sells products to New York residents. (List Decl. ¶¶ 3–4.) BVT–B's officers and employees visit the United States and New York from time to time. (List Depo. at 85.)

Some BVT–B's funds are invested in United States real estate owned or managed by BVT Equity Holding, Inc. of Atlanta, Georgia ("BVT Equity"). (List Depo. at 42–43, 62–65.) BVT Equity has extensive real estate holdings throughout the southeastern United States. (Lee Decl. Ex 50: Printed webpages from *www. bvt.com* dated Dec. 17, 2008.) The officers

---

**3.** Plaintiffs have not provided any evidence regarding BVT Holding's contacts with New York. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984) (allowing personal jurisdiction over foreign subsidiary based on parent's contacts with a forum); *see also Aboud v. Rapid Rentals Inc.*, 97 Civ. 1742(MGC), 1998 WL 132790 (S.D.N.Y. Mar. 24, 1998) (same).

and employees of BVT–B contact the employees of BVT Equity from time to time in connection with those investments. (List Depo. at 38–39.) BVT Equity and BVT–B do not have a parent-subsidiary relationship. (List Decl. ¶ 3; List Depo. at 42–43.) While neither BVT–B nor Plaintiffs offer any evidence as to the exact corporate relationship between the BVT companies in Germany and BVT Equity, Plaintiffs contend that BVT Equity is owned either by von Scharfenberg or BVT Holding, and that the BVT entities hold themselves out as a common enterprise.

### C. Jurisdiction Under New York State Law

#### 1. General Jurisdiction

■ Under § 301 of the New York Civil Practice Law & Rules ("CPLR"), this Court may exercise personal jurisdiction over a non-domiciliary corporation if the corporation is "doing business" in the State of New York at the time the complaint is filed. *Frummer v. Hilton Hotels Int'l Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, 853 (1967). "A corporation is doing business and is therefore present in New York and subject to personal jurisdiction with respect to any cause of action … if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir.2000) (citations and quotation marks omitted). The corporation must be engaged in "continuous, permanent, and substantial activity in New York." *Wiwa*, 226 F.3d at 95 (quoting *Landoil*, 918 F.2d at 1043).

■ "[A] court of New York may assert jurisdiction over a foreign corporation when it affiliates itself with a New York representative entity and that New York representative renders services on behalf of the foreign corporation that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available." *Wiwa*, 226 F.3d at 95. "Neither formal agency agreements nor direct control of the agent is required, but the agent must be primarily employed by the defendant and not engaged in similar services for other clients." *SK Shipping (Singapore) PTE Ltd. v. Petroexport Ltd.*, No. 08 Civ. 7758(WHP), 2008 WL 4602540, at *3 (S.D.N.Y. Oct.15, 2008); *see also Wiwa*, 226 F.3d at 95 (citations and quotations omitted).

■ BVT–B does not do business in such a continuous or systematic manner as to subject it to general jurisdiction in New York. The only BVT–B contacts with New York that Plaintiffs suggest are: (1) investments in New York-based equity funds, (2) occasional visits by officers of BVT–B, and (3) maintaining a website that could—but does not—market funds to New Yorkers. These contacts do not give rise to general jurisdiction in New York. *See BBC Chartering & Logistic GmbH & Co. KG v. Usiminas Mecanica S/A*, No. 08 Civ. 200(WHP), 2009 WL 259618, at *3–4 (S.D.N.Y. Feb.4, 2009) (fifteen visits and sporadic business contacts insufficient for continuous presence); *see also In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F.Supp.2d 376, 383 (S.D.N.Y. 2002) (interactive website not enough); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan*, 479 F.Supp.2d 376, 386–87 (S.D.N.Y.2007) (declining general jurisdiction, *inter alia*, defendant had entered into seven production sharing contracts with United States oil companies and signed a $750 million loan agreement with a syndicate that included a New York bank).

As for Plaintiffs' allegations that BVT–B associated itself with New York-based "agents" (i.e., CAM and Mathes), there is

no evidence that the alleged "agents" acted solely on behalf of BVT–B. On the contrary, the most generous reading of the alleged agency suggests that they were engaged in their own business independent of BVT–B. As for BVT Equity, there is no evidence that it has any contacts with New York. Accordingly, this Court does not have general jurisdiction over BVT–B based on its New York contacts.

### 2. Specific Jurisdiction

Under CPLR § 302(a), this Court may exercise personal jurisdiction over a foreign corporation if it:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if [it]

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce....

\* \* \*

N.Y.C.P.L.R. § 302(a).

### a. Section 302(a)(1)

■ "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321, 323–24 (1981)). "With respect to the first part of the test for jurisdiction under section 302(a)(1), New York courts define 'transact[ing] business' as purposeful activity—'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Best Van Lines v. Walker*, 490 F.3d 239, 246–47 (2d Cir.2007) (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604, 607 (1967)); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104–05 (2d Cir.2006). "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *D.H. Blair*, 462 F.3d at 105 (citations and quotation marks omitted). A claim "arises out of" a defendant's transaction of business in New York "when there exists 'a substantial nexus' between the business transacted and the cause of action sued upon." *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996).

■ Plaintiffs point to discussions with CAM and BVT regarding the German Funds. However, those discussions do not qualify as transacting business in New York because they were sporadic contacts by telephone or electronic mail that never resulted in any formal business arrangement. They do not show any purposeful availment by BVT–B of the laws or protections of New York. *See Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*, No. 05 Civ. 9994(KMW), 2007 WL 747807, at *6 (S.D.N.Y. Mar.9, 2007) (send-

ing a small number of faxes and telephone calls is insufficient). In addition, there is no nexus among BVTB's investments in New York-based funds, visits by its managing directors to New York, and the claims at issue in this lawsuit. Accordingly, § 302(a)(1) does not provide a basis for personal jurisdiction.

### b. *Section 302(a)(2)*

"[J]urisdiction under CPLR § 302(a)(2) will not be found where the plaintiff 'fail[s] to allege that [defendant] or his agents committed a tortious act [while physically present in New York]....'" *Overseas Media, Inc. v. Skvortsov,* 407 F.Supp.2d 563, 572 (S.D.N.Y.2006) (quoting *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 29 (2d Cir.1997) (alterations in the original)). While there are no allegations that BVT–B committed any tortious acts within New York, Plaintiffs assert that Oppenheim's and CAM's tortious acts can be imputed to BVT–B through the alleged conspiracy. However, Plaintiffs have not alleged sufficient facts regarding a conspiracy. *See In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (conclusory allegations of conspiracy insufficient). Accordingly, Section 302(a)(2) cannot serve as a basis for jurisdiction. *See Ivy Mar Co. v. C.R. Seasons, Ltd.,* No. 95 Civ. 508(FB), 1997 WL 37082, at *5 (E.D.N.Y. Jan.24, 1997) ("[A] bland assertion of conspiracy or agency is insufficient to establish jurisdiction for purposes of section 302(a)(2).").

### c. *Section 302(a)(3)*

 "Under [Section 302(a)(3)], the [Plaintiffs] must show both that an injury occurred 'within the state,' and that the elements of either clause (i) or (ii) have been satisfied." *Ingraham v. Carroll,* 90 N.Y.2d 592, 665 N.Y.S.2d 10, 687 N.E.2d 1293, 1294 (1997). "The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdic-

tion under § 302(a)(3) where the underlying events took place outside New York." *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 209 (2d Cir.2001) (internal citations omitted); *see also Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.,* 975 F.Supp. 494, 497 (S.D.N.Y.1997) ("[I]t is not sufficient to satisfy section 302(a)(3) that a plaintiff is located in New York and lost profits there." (citing *Fantis Foods, Inc. v. Std. Importing Co.,* 49 N.Y.2d 317, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980))). Rather, jurisdiction "must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there." *Fantis Foods,* 425 N.Y.S.2d 783, 402 N.E.2d at 126. The events giving rise to the alleged injury—the publication of the private placement memoranda and sales of the German Funds—occurred exclusively in Germany. Accordingly, Section 302(a)(3) cannot serve as a basis for jurisdiction, even if Plaintiffs suffered financial harm in New York. *See Aqua Shield, Inc. v. Inter Pool Cover Team,* No. 05 Civ. 4880(CBA), 2007 WL 4326793, at *4 (E.D.N.Y. Dec.7, 2007) (finding financial injury insufficient where acts of patent infringement occurred outside of New York).

### D. *Federal General Jurisdiction*

"Fed.R.Civ.P. 4(k)(2) 'allows the exercise of personal jurisdiction by a federal district court when three requirements are met: (1) the claim must arise under federal law; (2) the defendant must not be subject to jurisdiction in any state's court[ ] of general jurisdiction; and (3) the exercise of jurisdiction must be consistent with the United States Constitution and laws.'" *BBC Chartering,* 2009 WL 259618, at *5 (quoting *Porina,* 521 F.3d at 127 (internal quotation marks omitted)); *see*

also *Eskofot A/S v. E.I. Du Pont De Nemours & Co.,* 872 F.Supp. 81, 87 (S.D.N.Y. 1995).

"When a plaintiff has invoked Rule 4(k)(2) as the basis for jurisdiction in federal court, the minimum contacts analysis is 'based on [defendant's] contacts with the United States as a whole.'" *In re South African Apartheid Litig.,* 643 F.Supp.2d 423, 430, 2009 WL 1788051, at *4 (S.D.N.Y. 2009) (quoting *Dardana Ltd. v. Yugansknefiegaz,* 317 F.3d 202, 207 (2d Cir. 2003)). Thus, "plaintiff[ ] must satisfy the more stringent minimum contacts test ... by showing that [the defendant] had continuous and systematic general business contacts with the United States." *Porina,* 521 F.3d at 128 (quotations and citations omitted). "This standard requires plaintiff to prove that defendant's contacts approximate physical presence in the United States." *BBC Chartering,* 2009 WL 259618, at *5 (citations and internal quotation marks omitted). Courts have extended general jurisdiction over a parent corporation and foreign subsidiaries if the jurisdictional acts in the United States can be imputed to the foreign corporation. *See ESI, Inc. v. Coastal Corp.,* 61 F.Supp.2d 35, 51–52 (S.D.N.Y.1999).

■ In this case, Plaintiffs have provided no evidence linking BVT Equity with BVT Holding and BVT–B in such a way that BVT Equity's contacts may be imputed to BVT–B. As for the other contacts with the United States as a whole—the previously discussed contacts with New York and the sporadic contacts by BVT–B with BVT Equity in Atlanta—they are insufficient to give rise to general jurisdiction. *See BBC Chartering,* 2009 WL 259618, at *5 (visits not enough). Accordingly, BVT–B's motion to dismiss for lack of personal jurisdiction is granted.

## II. *Motions To Dismiss By Oppenheim And CAM*

On a motion to dismiss, the Court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. *Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998). Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S. Ct at 1949 (citation omitted). A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). In addition, under Federal Rule of Civil Procedure 44.1, this Court may make determinations regarding foreign law by considering "any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed.R.Civ.P. 44.1.

■ On a motion to dismiss for lack of subject matter jurisdiction, a court must

also accept the material facts alleged in the complaint as true and construe all reasonable inferences in plaintiff's favor. *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161 (2d Cir.2000); *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). Dismissal is appropriate only when "it appears beyond doubt that the plaintiff can present no set of facts entitling [Plaintiff] to relief." *Chosun Int'l. Inc. v. Chrisha Creations, Ltd.,* 413 F.3d 324, 327 (2d Cir.2005). It is a plaintiff's burden to establish subject matter jurisdiction. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

### III. Derivative Standing To Sue And Tortious Interference

When this action was filed, Tatara brought the claims derivatively because Mathes refused to consent to the suit. In their motions to dismiss, the Defendants[4] contend Tatara lacked derivative standing to sue and moved to dismiss a tortious interference with contract claim that Tatara brought. However, while the motion was pending, Mathes settled the claims against her and agreed to join the lawsuit. Plaintiffs have filed a Second Amended Complaint reflecting this change, and withdrawing Tatara's tortious inference claim. "When a plaintiff amends its complaint while a motion to dismiss is pending the court may den[y] the motion as moot [or] consider[ ] the merits of the motion in light of the amended complaint." *Illiano v. Mineola Union Free School Dist.,* 585 F.Supp.2d 341, 349 (E.D.N.Y.2008) (quotation marks omitted and alterations in the original). Accordingly, this Court denies Defendants' motion to dismiss for lack of derivative standing and dismisses Tatara's claim for tortious interference as moot.

### IV. False Advertising

#### A. Sufficiency Of The Pleadings

The Lanham Act provides that a plaintiff may sue for a "false or misleading description of fact, or false or misleading representation of fact, which [wa]s likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). "To state a claim for false advertising under the Lanham Act, plaintiff must allege either that 'the advertising is literally false as a factual matter' or that 'although the advertisement is literally true, it is likely to deceive or confuse customers.'" *Nat'l Lighting Co. v. Bridge Metal Indus., LLC,* 601 F.Supp.2d 556, 564–65 (S.D.N.Y.2009) (quoting *Lipton v. Nature Co.,* 71 F.3d 464, 474 (2d Cir.1995)); *see also Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.,* 380 F.3d 126, 132 (2d Cir.2004); 15 U.S.C. § 1125(a)(1)(B). Literally false statements include statements that are false by necessary implication. *See Time Warner Cable, Inc. v. DIRECTV. Inc.,* 497 F.3d 144, 158 (2d Cir. 2007) ("If the words or images, considered in context, necessarily imply a false message, the advertisement is literally false."); *see also Playtex Prods., Inc. v. Procter & Gamble Co.,* 635 F.Supp.2d 313, 321, 2009 WL 2043897, at *7 (S.D.N.Y.2009) (noting that "only an unambiguous message can be literally false"). When an advertisement is shown to be literally false, "consumer deception is presumed, and the court may grant relief without reference to the advertisement's impact on the buying public." *Time Warner,* 497 F.3d at 153 (citation omitted).

---

4. Because this Court dismisses BVT–B for lack of personal jurisdiction, it considers only Oppenheim's and CAM's motions to dismiss the First Amended Complaint on their merits.

■ The false representation must also "misrepresent[ ] an inherent quality or characteristic of the product." *S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232, 238 (2d Cir.2001) (citation omitted). The inherent quality requirement is "essentially one of materiality;" plaintiff must prove that the deception is likely to influence purchasing decisions. *See Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 855 (2d Cir.1997).

■ Plaintiffs have adequately pled a claim for false advertising under the Lanham Act. There is no dispute that the private placement memoranda were advertising materials. According to the private placement memoranda, Plaintiffs were involved in managing the German Funds. However, the First Amended Complaint alleges that Plaintiffs had absolutely nothing to do with the German Funds. At this stage of the litigation, that allegation is sufficient to establish that the statements in the private placement memoranda relating to Plaintiffs were literally false. In addition, the private placement memoranda repeatedly emphasized Plaintiffs' names, their familiarity with emerging markets, and their access to investment opportunities, which suggest their involvement could be important to consumer decisions to invest in the German Funds. *See Cashmere & Camel Hair Mfrs. Instit. v. Saks Fifth Ave.,* 284 F.3d 302, 312 (1st Cir.2002) (defendant's "aggressive marketing strategy" highlighting particular characteristic of a product showed that the defendants believed it to be an "inherent and important" characteristic).

## B. *Extraterritorial Application*

■ "The Lanham Act applies extraterritorially if and only if there is a substantial effect on United States commerce." *Software AG. Inc. v. Consist Software Solutions, Inc.,* No. 08 Civ. 389(CM), 2008 WL 563449, at *14 (S.D.N.Y. Feb.21, 2008), *aff'd,* 323 Fed. Appx. 11 (2d Cir.2009) (citing *Alt. Richfield Co. v. ARCO Globus Int'l Co.,* 150 F.3d 189, 192 n. 4 (2d Cir.1998)). Courts consider three factors—the so-called *Vanity Fair* factors—in determining if the Lanham Act is to be applied extraterritorially: (1) whether the defendants' conduct has a substantial effect on United States commerce; (2) whether the defendant is a United States citizen; (3) whether there exists a conflict with trademark rights under foreign law. *See Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 642 (2d Cir.1956). "None of these three factors is dispositive; rather, courts are to balance the factors in deciding whether the 'contacts and interests of the United States are sufficient to support the exercise of extraterritorial jurisdiction.'" *Software AG,* 2008 WL 563449, at *14 (quoting *Warnaco Inc. v. VF Corp.,* 844 F.Supp. 940, 950 (S.D.N.Y.1994)). However, at least any two of the three factors must be satisfied before a court will apply the Lanham Act extraterritorially. *See Totalplan Corp. of Am. v. Colborne,* 14 F.3d 824, 831 (2d Cir.1994).

■ First, Plaintiffs have alleged a plausible, substantial effect on United States commerce—their inability to market the Core Fund due to the false statements in the private placement memoranda for the German Funds. As the recent economic turbulence has demonstrated, no segment of the United States economy is more global than finance. Since money flows almost indiscriminately across borders, false statements concerning Plaintiffs in a private placement memorandum in Germany could plausibly and substantially affect commerce in the United States.

As for the second factor, while CAM is a German corporation, it has a substantial presence in the United States: it has an American subsidiary, it entered into an

American-based joint venture with Plaintiffs, and consented to jurisdiction of United States courts to resolve disputes relating to its relationship with Plaintiffs. Therefore, CAM may be treated as a United States citizen for purposes of this analysis. *See A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 126 F.Supp.2d 328, 337 (S.D.N.Y.2001) (finding defendant a "constructive" United States citizen due to substantial contacts); *see also Calvin Klein Indus., v. BFK Hong Kong, Ltd.*, 714 F.Supp. 78, 80 (S.D.N.Y.1989) (same).

Finally, this Court does not find any substantial conflict between United States and foreign law in this case. While Defendants' experts contend that German securities laws would prevent CAM and BVT from rescinding the private placement memoranda, (Declaration of Dr. Thorsten Voss dated Sept. 30, 2008 at 4–5; Declaration of Dr. Laurenz Wieneke dated Oct. 2, 2008 ("Wieneke Decl."), at 3–4), one of Defendants' experts (Dr. Wieneke) also explains that the private placement memoranda are subject to German unfair competition law (Wieneke Decl. at 6–7). Thus, while there could be a conflict if this Court issued a broad injunction, Defendants' experts do not opine that German law prevents this Court from imposing money damages or tailoring an injunction in light of German securities laws. *See Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 746 (2d Cir.1994) ("While the stringent *Vanity Fair* test is appropriate when the plaintiff seeks an absolute bar against a corporation's use of its mark outside our borders, that test is unnecessarily demanding when the plaintiff seeks the more modest goal of limiting foreign uses that reach the United States."); *see also Software AG*, 2008 WL 563449, at *14 (noting where foreign law also prohibits false advertising in the marketplace there is no conflict with foreign law). Accordingly, all three factors weigh in favor of the extraterritorial application of the Lanham Act, and Defendants' motion to dismiss the false advertising claim is denied.

### V. Supplemental Jurisdiction

"A court with original federal jurisdiction over certain claims has supplemental jurisdiction over state law claims 'that are so related ... that they form part of the same case or controversy under Article III of the United States Constitution.'" *Bray v. City of N.Y.*, 356 F.Supp.2d 277, 282 (S.D.N.Y.2004) (quoting 28 U.S.C. § 1367(a)). Two claims constitute the "same case or controversy" when they arise from a "common nucleus of operative fact." *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213–14 (2d Cir.2004) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

"Even when state and federal claims are intertwined, a court must examine four factors to determine whether exercising supplemental jurisdiction would be prudent." *Bray*, 356 F.Supp.2d at 282 (citing *Jones*, 358 F.3d at 214). A court may, in its discretion, decline to exercise jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *see also Valencia v. Lee*, 316 F.3d 299, 305 (2d Cir.2003). When any one of these factors is present, the court should exercise supplemental jurisdiction only if doing so would promote "economy, convenience, fairness, and comity." *Jones*, 358 F.3d at 214.

Here, the false advertising claim is part of the same case or controversy as

the state law claims. All of the claims in this action revolve around the breakdown of the relationship between the parties caused in large part by the statements in the German Funds' private placement memoranda. Thus, the same nucleus of facts—the relationships between the parties, the formation of the Joint Venture, and its failure—are central to both sets claims. *See Bray,* 356 F.Supp.2d at 282–83. Accordingly, this Court has supplemental jurisdiction over the state law claims.

As for the § 1367(c) factors, this Court has not dismissed the federal claim and the dispute neither raises any novel issues of state law, nor "exceptional circumstances" that would weigh against exercising jurisdiction. *See Bray,* 356 F.Supp.2d at 283. Finally, there is a substantial overlap between the evidence required to prove liability and damages for the federal and state law claims. Also, the state law claims only affect one party that is not subject to the federal claim. *See Bray,* 356 F.Supp.2d at 284 ("A state law claim predominates over a federal claim when the number of people its resolution will affect overwhelms those impacted by the federal claim."). Moreover, even if the state law claims overwhelmed the federal claims, judicial economy favors a single action, and there is no reason to defer to a state court for resolution of a dispute among mostly foreign parties. Accordingly, none of the § 1367(c) factors suggest that this Court should decline to exercise supplemental jurisdiction over the state law claims. Because this Court finds that it has supplemental jurisdiction over the state law claims, it denies Defendants' motion to dismiss the state law claims for lack of subject matter jurisdiction.

### VI. *Declaratory Judgment Against Oppenheim*

■ While non-signatories normally cannot be liable for a breach of contract under New York law, *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.,* No. 07 Civ. 432(LAP), 2008 WL 650403, at *12 (S.D.N.Y. Mar.7, 2008), there are exceptions to this rule, such as when a noncompete agreement includes an "affiliates" clause and the non-signatory buys a controlling stake in a signatory to the contract, *see Credit Index, L.L.C. v. RiskWise Int'l L.L.C.,* 192 Misc.2d 755, 746 N.Y.S.2d 885, 888–89 (N.Y.Sup.2002), *aff'd* 298 A.D.2d 36, 746 N.Y.S.2d 326 (1st Dep't 2002). The First Amended Complaint alleges that Oppenheim purchased a majority stake in CAM and has control over it. The non-compete provision at issue covers "affiliates" of the signatories. Plaintiffs plausibly allege that Oppenheim is an affiliate subject to the exclusivity provision of the Joint Venture Agreement and that its alleged actions violated the exclusivity clause. *See Credit Index,* 746 N.Y.S.2d at 888–89 ("[A] number of cases support [plaintiff's] contention that a non-signatory entity may, by virtue of its subsequent creation or acquisition of a signatory to an agreement, be considered an 'affiliate' within the meaning of the agreement, and be bound by the non-compete provision therein."). Accordingly, Oppenheim's motion to dismiss the declaratory judgment claim is denied.

### VII. *Unfair Competition*

■ "New York courts have noted the incalculable variety of illegal practices falling within the unfair competition rubric, ... calling it a broad and flexible doctrine that depends more upon the facts set forth ... than in most causes of action." *Roy Export Co. Estab. v. Columbia Broad. Sys., Inc.,* 672 F.2d 1095, 1105 (2d Cir. 1982) (internal quotation marks and citations omitted). While some courts have stated that common law unfair competition claims can be "grounded in either deception or appropriation of the exclusive prop-

erty of the plaintiff," *see, e.g., H.L. Hayden Co. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1025 (2d Cir.1989), "[t]he essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship," *Telecom Int'l Am., Ltd. v. AT & T Corp.,* 280 F.3d 175, 197 (2d Cir.2001).

■ Equating Plaintiffs' unfair competition claim to trademark infringement, Defendants argue that the claim must be dismissed because consumers do not "primarily associate the [the names New-Markets Partners and CAM NewMarkets Partners] with the plaintiffs." However, Plaintiffs' claim goes far beyond their "trade name." Plaintiffs allege that CAM convinced NewMarkets to form a "sham" partnership in order to gain access to Plaintiffs' ideas, names, and business plans, so that CAM could enter the emerging markets private equity funds market on their own. Together with Plaintiffs' allegations that CAM created funds to compete with the Joint Venture using their fund model, Plaintiffs' have stated a claim for unfair competition under New York law. *See LinkCo, Inc. v. Fujitsu Ltd.,* 230 F.Supp.2d 492, 501 (S.D.N.Y. 2002) ("Indeed, the doctrine of unfair competition has been applied in various situations, like this, where the plaintiff alleges misappropriation of information that does not rise to the level of misappropriation of trade secrets or ideas."). However, Plaintiffs allege no independent acts by Oppenheim. Rather, their allegations are conclusory allegations of conspiracy. *See In re Elevator Antitrust Litig.,* 502 F.3d at 50 (conclusory allegations of conspiracy insufficient). Accordingly, Oppenheim's motion to dismiss Plaintiffs' unfair competition claim is granted, but CAM's motion to dismiss that claim is denied.

## VIII. *Civil Conspiracy*

■ "It is a well-settled and often repeated principle of New York law that no cause of action lies for civil conspiracy." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 591 (2d Cir.2005) (collecting cases). While a conspiracy may be alleged, "for the purpose of showing that a wrong was committed jointly by the conspirators and that, because of their common purpose and interest, the acts of one may be imputed to the others," *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 123 (2d Cir.1981), plaintiffs may not "reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim," *Aetna,* 404 F.3d at 591. Thus, while Plaintiffs are free to include allegations of a conspiracy in their complaint, those allegations do not constitute an independent claim. Accordingly, Plaintiffs' claim for civil conspiracy is dismissed.

## IX. *Unjust Enrichment*

■ "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require compensation." *Beth Israel Med. Center v. Horizon Blue Cross & Blue Shield of N.J., Inc.,* 448 F.3d 573, 586 (2d Cir.2006). Unjust enrichment is "an amorphous cause of action, but one which falls under the umbrella of quasi-contract, or contract implied-in-law." *Michele Pommier Models, Inc. v. Men Women N.Y. Model Mgmt., Inc.,* 14 F.Supp.2d 331, 338 (S.D.N.Y.1998), *aff'd,* 173 F.3d 845, 1999 WL 236895 (2d Cir.1999). Unjust enrichment is premised on the notion that where principles of contract law are inadequate to compensate an unjustly deprived party, a court should resort to principles of equity. *See Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir.2000). "The existence of a valid and enforceable

written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark–Fitzpartick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 193 (1987). However, "[w]hen there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim." *Labajo v. Best Buy Stores, L.P.*, 478 F.Supp.2d 523, 531 (S.D.N.Y.2007) (citing *In re Vivendi Universal, S.A.*, No. 02 Civ. 5571(RJH), 03 Civ. 2175(RJH), 2004 WL 876050, at *12 (S.D.N.Y. Apr. 22, 2004)).

While Defendants are correct that Plaintiffs may recover only under a contract theory or an unjust enrichment theory— but not both, there is clearly a dispute whether the use of Plaintiffs' names and reputations in the private placement memoranda is covered by the Joint Venture Agreement. Therefore, Plaintiffs are not precluded from pleading unjust enrichment in the alternative.[5] *See Labajo*, 478 F.Supp.2d at 531. Accordingly, CAM's motion to dismiss the unjust enrichment claim is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part. Defendant BVT Beratungs-, Verwaltungsund Treuhandgesellschaft für Internationale Vermörgensanlagen MBH's motion to dismiss the First Amended Complaint for lack of personal jurisdiction is granted. Defendant Sal. Oppenheim Jr. & CIE. S.C.A.'s motion to dismiss the unfair competition and civil

conspiracy claims is granted, and the other branches of its motion are denied. Defendant CAM Private Equity Consulting & Verwaltungs GmbH's motion to dismiss the civil conspiracy claim is granted. CAM's motion to dismiss the tortious interference claim is denied as moot, because that claim is withdrawn in the Second Amended Complaint. The other branches of CAM's motion to dismiss are denied.

SO ORDERED.

---

**5.** Defendants also move to dismiss the unjust enrichment claim on the ground that Tatara cannot recover independently for injuries that are identical to those suffered by NewMark-

ets. However, that argument is mooted by the Second Amended Complaint, because NewMarkets, not Tatara, now asserts that claim.